THE STATE v. McCOLLUM, *Appellant*.

Division Two, January 31, 1894.

1. **Appellate Practice**: OBJECTIONS AND EXCEPTIONS.    Rulings on the evidence must be objected to and exceptions be saved or they will not be reviewed on appeal.

2. **Criminal Practice**: MURDER: THREATS.    Evidence, on a murder trial, that deceased had made threats against the defendant and had charged defendant with mistreating his sister, is sufficient to warrant the court in instructing the jury that no language used by deceased would justify the taking of his life by defendant.

3. ——: ——: INSTRUCTION.  Although defendant testified that he shot deceased because he thought the latter was about to shoot him, yet as the evidence also showed that deceased was unarmed, it was proper for the court to submit to the jury the question as to whether defendant was the aggressor or acted in self-defense.

4. ——: MANSLAUGHTER: INSTRUCTION.  The evidence showed that defendant and deceased were on unfriendly terms, that defendant was armed with a pistol while deceased was unarmed, that after some hot and angry words, as testified to by defendant, an effort was made by deceased to draw a weapon of some kind from his pocket,· when defendant shot and killed him.  *Held* that the court properly refused to instruct on manslaughter.

*Appeal from Linn Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED.

*A. W. Mullins* for appellant.

(1) The evidence of Jonas Cooper as to threats by defendant toward the deceased should have been stricken out (*Burns v. Railroad*, 24 Mo. App. 10); and this is true whether proper objections to the evidence were made or not.  *State v. O'Connor*, 65 Mo. 374.  The admission of improper testimony in criminal cases is not cured by an instruction for its exclusion.  Such evidence has its effect upon the minds of the jurors, often seriously prejudicial to the defendant, which cannot be erased by a mere instruction.  *State v. Thomas*, 99 Mo. 234; *State v. Daubert*, 42 Mo. 242; *State v. Mix*, 15 Mo. 153; *State v. Wolff*, 15 Mo. 168.  (2) The fifth instruction given for the state was erroneous.  *State v. Bailey*, 57 Mo. 131; *Raysdon v. Trumbo*, 52 Mo. 35; *McDermott v. Donegan*, 44 Mo. 85; *Wein v. State*, 14 Mo. 125; *Haegele v. Western Stove Co.*, 29 Mo. App. 486.  (3) The state's eighth instruction should not have been given.  It is not the law and is misleading and unauthorized by the evidence.  (4) Under the evidence in the case the court

should have instructed the jury on one or more degrees of manslaughter, and having failed so to do, thereby committed reversible error. *State v. Tabor*, 95 Mo. pp. 595, 596. (5) And the court on its own motion ought to have given, in this regard, proper instructions. *State v. Crabtree*, 111 Mo. 136; *State v. Branstetter*, 65 Mo. 149; *State v. Banks*, 73 Mo. 592; *State v. Palmer*, 88 Mo. 568.

*R. F. Walker*, Attorney General, and *Morton Jourdan*, Assistant, for the state.

(1) No objections were taken or exceptions saved to the evidence complained of. (2) The court rightly confined the instructions to murder in the first and second degrees. (3) The evidence was sufficient to warrant the verdict and this court will not interfere. *State v. Moxley*, 22 S. W. Rep. 575.

BURGESS, J.—Defendant was convicted in the circuit court of Linn county of murder in the second degree, and his punishment fixed at fifteen years' imprisonment in the state penitentiary for shooting with a pistol and killing one John Baker. The case is in this court on defendant's appeal. The facts are about as follows:

Defendant was appointed guardian of his minor half sister Esther McCollum, whose parents being dead, she lived with him and her younger brothers, defendant being a bachelor about thirty-five years of age. An attempt was made by John Baker, the deceased, an uncle of Esther, and one W. Allmond to have the latter appointed guardian of Esther in place of the defendant. This matter was discussed at a school meeting held on the seventh day of May, at which time deceased said there would likely be trouble over the affair; that if defendant did not behave himself and do better that

he would go down there and show him what he, deceased, could do.

It appears from the testimony that the defendant had heard of some declaration of Allmond in regard to the matter, and that he said to several persons that if Allmond, or Baker, the deceased, either, intended doing what they said they would do with reference to the change, he would kill them; that on the ninth day of May the deceased was given two copies of a notice of some character (the testimony does not disclose exactly what), one copy to be served upon defendant by delivering it to him, and the other to be kept for the purpose of making the return of the service; that on the morning of May 10 the deceased rode down to the residence of the defendant, hitched his mule in full view in the lot near the house, went to the back door to inquire the whereabouts of the defendant, and when he was informed that defendant had gone to work, went out to the barn to look for him; not finding him, he returned to the house, went in, sat down for a few minutes, talking to the children, when one of the children announced, "here comes Dan," meaning the defendant, when deceased went out in front of the house to meet him. Some words passed between them, and the defendant fired two shots from his pistol when about six or eight feet from the deceased, killing him instantly, the deceased falling upon his face to the ground. The defendant mounted his pony, which was standing near, and rode away, going in the direction of Allmond's. When, on the way, he met G. B. McCollum he drew his revolver and said, "hell's up down there," and when asked where he was going, said he was going to kill Allmond; and after a posse had been organized by the sheriff for the purpose of arresting him, he surrendered to that officer.

The body of the deceased was searched and the

ground around him where he fell after being shot was closely examined, but no weapon was found. A copy of the notice delivered to the deceased to be served upon the defendant was .found, which the evidence tends to show deceased had gone to the house of the defendant to serve upon him by delivering him a copy. No one saw the difficulty except the parties engaged therein.

The defendant testified in his own behalf that when he met deceased in the yard deceased said to him, defendant: "'Here is a subpœna for you to appear at the probate court.' I replied 'it will mighty near kill me to give these little children up after I have raised them from the cradle.' To which deceased replied, 'I will send you to hell with this,' and shoved his hand to his pocket, and then I shot. He shoved his right hand in his pocket, and I shot him because I thought he was going to shoot me. The smoke came in my face so that I could not see him the last time I shot." Deceased never spoke after the shooting. The.court instructed the jury for murder in the first and second degrees.

The first point for our consideration is with respect of the action of the trial court in not excluding the evidence of several of the state's witnesses as to threats by the defendant towards one Allmond, who it seems was acting in concert with the deceased in having defendant removed as the guardian of Esther McCollum, and himself appointed in his stead. While 'defendant's counsel made no objection to this testimony at the time, he did ask to have the testimony of one Jonas Cooper as to such threats stricken out; but the motion was overruled. It does not appear from an examination of the record that any exceptions were saved at the time to the ruling of the court and for that reason there is nothing here for review with respect thereto. *State v. Foster*, 115 Mo. 448; *State v. DeMosse,* 98 Mo. 340,

and cases cited; *State v. Musick*, 101 Mo. 260.

It is contended however that as such evidence was improper it was the duty of the court to have excluded it whether timely and proper objections were made by defendant or not, and the case of *State v. O'Connor*, 65 Mo. 374, is cited as an authority in support of this proposition. That case is not in harmony with the adjudications of this court and is not sustained by a single authority. On the contrary by a uniform line of decisions, it has been held that this court will not pass upon the admissibility of evidence when the record showed that it was received without objection. *State v. Lett*, 85 Mo. 52. It was in effect overruled in *State v. Hope*, 100 Mo. 347. It was said in the case of *State v. Foster*, 115 Mo. 448, SHERWOOD, J., speaking for the court, that: "Exceptions perform the same office in civil as in criminal cases, and are just as necessary in the one case as in the other; without them, promptly taken and properly preserved in the motion for a new trial, nothing except matters of record can be reviewed."

The court, at the instance of the state, instructed the jury as follows: "The jury are instructed that no language used by the deceased would justify the defendant in taking his life."

This instruction is assailed upon the ground, as claimed by the counsel for defendant, that it is a mere abstraction and was calculated to mislead the jury. We do not think it subject to the objection urged against it, as the evidence showed that the deceased had made some remarks about the defendant to the effect that he had been abusing his sister, Esther, and also some threats against him. There was sufficient evidence upon which to predicate the instruction and the court did not commit error in giving it.

It is also insisted that the court committed error

in giving the eighth instruction on the part of the state. It is as follows:

"The jury are instructed that the law of self-defense does not imply the right to attack; and if you believe from the evidence, beyond a doubt, that the defendant shot and killed the deceased unnecessarily, and when he did not have reasonable cause to believe that the deceased was then about to kill him, or to do him some great bodily harm or some personal injury, then there is no self-defense in the case, and you cannot acquit the defendant upon that ground."

While the evidence of the defendant himself was that he shot the deceased because he thought that deceased was going to shoot him and that he shot in defense of his person; yet the evidence also showed that deceased was unarmed and had no weapon of any kind about his person, and it was but right and proper that the court should submit to the jury, as it did by this instruction, the question as to whether the defendant was the aggressor or whether or not he acted in self-defense in shooting the deceased.

Another contention is that the court committed error in giving the tenth instruction on behalf of the state. When this instruction is taken in connection with the one given at the instance of the defendant on the same subject-matter, it is impossible to see how the defendant could have been prejudiced, or the jury misled thereby. We are constrained to hold, after some hesitation, that there was no error committed in giving this instruction.

It is further insisted that the court should have instructed the jury on one or more degrees of manslaughter. The facts as disclosed by the evidence made out a clear case of murder in one of its degrees, and while the distinguished counsel for defendant insists that there should have been an instruction for

manslaughter in one or more degrees, he has not seen proper to favor us with even a suggestion as to what degree or degrees of manslaughter the facts in this case come within, nor are we able to conceive. There does not seem to have been any reasonable provocation for the homicide; nothing in the facts to reduce the killing to manslaughter. *State v. Ellis*, 74 Mo. 207. The parties were not on equal terms, the instrument of death being a pistol, a deadly weapon, while the deceased was unarmed. The defendant having a pistol about his person when he met the deceased, after some hot and angry words, and after, as defendant stated as a witness in his own behalf, an effort on the part of the deceased to draw from his pocket a weapon of some kind with which to do him some violence, he shot him twice and killed him. The court did not err in failing to instruct for manslaughter.

There is no complaint made of the instructions with respect of murder in the first and second degrees and as the evidence establishes the guilt of the defendant of the last named offense, the judgment should not be interfered with by this court. Judgment affirmed. All of this division concur.