## THE STATE v. HIGGINS, *Appellant.*

### Division Two, November 20, 1894.

1. **Criminal Law:** PERJURY: EVIDENCE. On a trial for perjury charged to have been committed by defendant, on a trial for an assault, testimony showing that after the assault defendant's son had said, "Tuck looked so funny when pa drew the hatchet" and the reply of defendant's wife thereto, is competent, though the son was not a witness, to contradict the testimony of defendant's wife, on his behalf, that no such conversation took place.

2. **Criminal Practice:** EVIDENCE: OBJECTIONS: EXCEPTIONS. Error in the admission of testimony, either in a criminal or civil cause, is not available on appeal where no objections were made nor exceptions saved.

State v. Higgins.

3. ——: PERJURY: JURISDICTION: JUDICIAL NOTICE. Where the defendant's counsel admitted that the docket of the justice before whom defendant was tried showed that a cause was pending against defendant for assault, and that defendant was a witness therein, the court will take judicial notice that justices had jurisdiction in such cases.

4. ——: ——: IMMATERIAL VARIANCE: INSTRUCTION. Where the indictment charged defendant with having falsely testified, on trial for an assault, that the person claimed to have been assaulted was not on defendant's premises on the day of the assault, an instruction that defendant was guilty if he falsely testified that if the person was at his house he did not know it, was not error.

5. ——: ——: INSTRUCTION. An instruction that defendant was guilty, if his testimony was false, without stating that it must be found that he willfully testified falsely, is erroneous.

*Appeal from Mercer Circuit Court.*—HON. P. C. STEPP, Judge.

REVERSED AND REMANDED.

*Bolster & Steckman* and *H. J. Alley* for appellant.

(1) The testimony of Mr. and Mrs. Bixler, as to the conversation at Mr. Higgins' house, in the absence of the defendant, was incompetent and prejudicial. This error is too glaring to be defended, or to require citation of authorities. (2) The testimony of witness Hampton was incompetent. Upon a trial for perjury incompetent testimony could not be waived. (3) It was not necessary to object specifically to the questions to witness Hampton. The court should have rejected it upon its own motion. The statement of defendant's counsel that witness might testify to contents of his docket was sufficient objection to all other testimony by such witness. *State v. Douglas*, 15 Mo. App. 1; *State v. O'Connor*, 65 Mo. 374; *State v. Brown*, 115 Mo. 409. (4) The indictment does not charge that witness falsely testified that "if Daniel W. Ragan was at his

(Higgins') house on the twenty-eighth day of October, 1891, he did not know it." The instructions must traverse and conform to the issues presented by the indictment. *State v. Hamilton*, 65 Mo. 667; *State v. Frisby*, 90 Mo. 530. (5) This instruction is also bad for the reason that it failed to tell the jury that before they could find the defendant guilty they must find that defendant willfully, corruptly or knowingly testified falsely. To make him guilty of perjury the indictment must set out that he testified willfully or knowingly, corruptly and falsely, and the court must instruct the jury that before they can find him guilty they must believe from the evidence beyond a reasonable doubt that he did willfully (that is knowingly), corruptly and falsely testify to the words charged in the indictment. *State v. Hong Tong*, 115 Mo. 389; *State v. Reed*, 117 Mo. 604; *State v. Herrell*, 97 Mo. 105.

*R. F. Walker*, Attorney General, for the state.

(1) The indictment is sufficient. It sets out all the material and necessary facts which constitute the crime of perjury. R. S. 1889, sec. 3665; *State v. Huckeby*, 87 Mo. 414; *State v. Cave*, 81 Mo. 450. (2) This court will only interfere with the verdict of the jury and the judgment of the trial court upon the ground that the verdict is not supported and authorized by the evidence, where there is a total failure of proof. *State v. Young*, 24 S. W. Rep. 1038; *State v. Richardson*, 117 Mo. 586; *State v. Moxley*, 115 Mo. 586; *State v. Hermann*, 117 Mo. 629; *State v. Banks*, 118 Mo. 117. On the contrary, the testimony in this case conclusively established the guilt of the defendant. (3) The courts will take judicial notice of the jurisdiction of justices of the peace to hold preliminary examinations of defendants charged with felony, as well as all duties of public

officers.   *State v. Gates*, 67 Mo. 139.   (4) The question asked Mr. and Mrs. Bixler were relevant and competent. (5) One of the material facts in which the state charged in the indictment that defendant swore falsely was, "Daniel W. Ragan was not at my dwelling house in said county."   The evidence established the fact of Ragan's presence, and the court properly instructed the jury that if defendant testified before Hampton, justice of the peace, that Ragan was not there, and if there, he, defendant, did not know it, they should find defendant guilty, etc.   This instruction followed the language of the indictment, was supported by the testimony, correctly declared the law, and was properly given.   Nor is the instruction to be restricted to the exact language charged in the indictment, but the substance of the charge alleged.   *State v. Frisby*, 90 Mo. 533.

BURGESS, J.—The defendant was convicted at the September term, 1893, of the circuit court of Mercer county on an indictment charging him with the crime of perjury and his punishment assessed at two years' imprisonment in the penitentiary.   From the judgment and sentence he appeals.

The indictment, leaving out the formal parts, is as follows:  "The grand jurors for the state of Missouri for the body of Mercer county, being duly impaneled, sworn and charged upon their oaths, present that heretofore, to wit: on the sixteenth day of November, 1891, at the county of Mercer and state of Missouri, before P. C. Hampton, a duly qualified and acting justice of the peace of said county, a certain action wherein the state of Missouri was plaintiff and James J. Higgins was defendant, on an information of the prosecuting attorney for assault on Daniel W. Ragan, came on to be tried in due form of law, the said justice then and there having competent authority in that behalf; and the

said issue was then and there tried by said justice, upon which said trial the said James J. Higgins then and there appeared as a witness in his own behalf and was then and there duly sworn and took his oath before the said justice, which said oath was then and there administered by the said justice, P. C. Hampton, to the said James J. Higgins, he, the said P. C. Hampton, having full power and competent authority to administer the said oath to the said James J. Higgins in that behalf, that the evidence which he, the said James J. Higgins, should give to the court there touching the matter then in question in the action aforesaid should be the truth, the whole truth and nothing but the truth. And that at and upon the trial of the said issue so joined in the action aforesaid it then and there became and was a material question whether the said Daniel W. Ragan had at any time within one year prior to the filing of the information aforesaid been at the dwelling and within the dooryard and upon the premises of the said James J. Higgins, in said county, and that the said James J. Higgins then and there on the trial of said issue upon his oath aforesaid feloniously, willfully, corruptly and falsely before the court and justice aforesaid did depose and swear in substance and to the effect following: That is to say, 'Daniel W. Ragan was not on his premises; Daniel W. Ragan was not at my dwelling house in said county; Daniel W. Ragan was not within my dooryard in said county. He (meaning Daniel W. Ragan) was not there at all. I never ordered him (meaning Daniel W. Ragan) off my premises. I never drew a hatchet into a striking position and cursed Daniel W. Ragan and ordered him to get off my premises for he, Daniel W. Ragan, was not there at all.' Whereas in truth and in fact Daniel W. Ragan was on the premises of the said James J. Higgins in said county and was at the dwelling house

of the said James J. Higgins in said county and within the dooryard of said James J. Higgins in said county; and whereas in truth and in fact the said Daniel W. Ragan was there and the said James J. Higgins ordered him off his premises; and whereas in truth and in fact he, James J. Higgins, did draw a hatchet into a striking position and curse the said Daniel W. Ragan and order him to get off his premises, meaning the premises of the said James J. Higgins.

"And so the jurors aforesaid upon their oaths aforesaid, do say that the said James J. Higgins on the said sixteenth day of November, 1891, at the county aforesaid, before the court and justice aforesaid, upon the trial aforesaid, did in manner and form aforesaid feloniously, willfully, corruptly and falsely commit willful and corrupt perjury against the peace and dignity of the state."

The evidence shows that the D. W. Ragan mentioned in the indictment was assessor of Marion township in Mercer county; that on October 28, 1891, he went to the house where defendant resided for the purpose of assessing his property when he, defendant, assaulted him with a hatchet and ordered him to leave the premises. Ragan then had him arrested for assault before P. C. Hampton, a justice of the peace, and upon the trial before said justice defendant testified that he had not assaulted Ragan; that Ragan had not been to his house or on his premises at the time charged and that if he had he had not seen him.

On the trial the wife of the defendant, Mrs. Higgins, was sworn as a witness in his behalf and upon her cross-examination testified as follows:

"Q. Mrs. Higgins, do you know Mr. Bixler and Mrs. Bixler? A. Yes, sir.

"Q. I'll ask you if you remember of them being at your house some time after this—short time after

this trouble occurred, when there was a conversation about it between you and your oldest boy? *A.* No, sir, there wasn't any.

"*Q.* There wasn't any? *A.* No, sir.

"*Q.* Now I'll ask you if it is not true, Mrs. Higgins, that Mr. and Mrs. Bixler were at your house some time in December and you were all talking about the matter, and the oldest boy, your boy Bethel, said this: 'Tuck looked so funny when pa drew the hatchet on him,' and if you didn't say 'Jim didn't draw the hatchet; he just had it in his hand and told Mr.—told Tuck to get? *A.* Why, the children were at school.

"*Q.* No, I asked you if such conversation didn't happen at that time at your house? *A.* No, sir.

"*Q.* You say they were at school at that time? *A.* Yes, sir; all fall.

"*Q.* All fall? *A.* Yes, sir, and winter.

"*Q.* Were they at school at the time of the conversation between you and Mr. and Mrs. Bixler about it? *A.* There wasn't any conversation.

"*Q.* There was no conversation? *A.* No, sir."

The state subsequently called Mrs. Bixler as a witness who testified, over defendant's objections, as follows:

"*Q.* Mrs. Bixler, have you been sworn? *A.* Yes, sir.

"*Q.* Are you acquainted with Mr. Higgins? *A.* Yes, sir.

"*Q.* Are you acquainted with their oldest boy, Bethel? *A.* Yes, sir.

"*Q.* Tell the jury whether or not you and your husband were at Mr. Higgins' house in December, 1891, and this conversation occurred that Bethel said, speaking of Ragan—he called him 'Tuck'—'Tuck looked so funny when pa drew the hatchet on him,' and that Mrs. Higgins then said, 'Jim didn't draw the

hatchet, he just had it in his hand and told him to go out?' Tell the jury whether or not that was said there? *A.* Yes, sir, something—that was nearly the exact words as near as I can remember from the length of time it occurred.

On cross-examination she testified:

"*Q.* Now tell the jury, Mrs. Bixler, just what language was used there? *A.* Well, Bethel made the remark. I don't remember how the conversation first started in regard to this case—of course it was kind of a general subject, the trouble was—and Bethel made the remark that 'Tuck looked so funny when pa drew the hatchet,' and his ma checked him and she says, 'Jim didn't draw the hatchet, he merely had it in his hand; had been fixing fence and he just simply shook it at Tuck and told him to get out of the yard.'

The objection urged against the introduction of this testimony at the time was, because the statement purported to have been made in part by a person who was not present at the trial, and that no such statements, even if made, could bind the defendant.

The purpose of the evidence was to contradict the witness, Mrs. Higgins, and although the conversation was participated in by her son Bethel, she corrected him in a remark that he made tending to show that Ragan was at the house of defendant at the time stated by him, for the purpose of assessing the defendant's property. It was not for the purpose of contradicting Bethel that it was offered, and was competent for the purpose for which it was offered notwithstanding he had not testified as a witness. The proper foundation had been laid for the contradiction of the witness Mrs. Higgins by calling her attention to the time and place at which the conversation should have occurred and she had denied that it ever took place, and it was not incompetent merely because of the fact that one of the

parties participating in the conversation was not sworn as a witness in the cause. The inquiry as to the conversation would have been meaningless without including the remarks made by Bethel, in correction of which Mrs. Higgins said what she did.

The same may be said with respect of the testimony of the witness, Mr. Bixler, who was interrogated in regard to the same conversation in the same way and testified in almost the exact language that his wife did.

The next contention is that the testimony of one Hampton, the justice of the peace before whom the perjury is alleged to have been committed, was improperly admitted. There was no objection made to the testimony of this witness at the time he was testifying, but it is argued that the court should have excluded it of its own motion, and *State v. O'Connor*, 65 Mo. 374, is relied upon as sustaining this contention. That case has long since been overruled. *State v. Hope*, 100 Mo. 347; *State v. McCollum*, 119 Mo. 469. It is just as necessary to make objections to the introduction of incompetent and illegal testimony and to save exceptions to the ruling of the court with respect thereto in criminal as in civil cases, and unless that course is pursued there will be nothing before this court for it to pass upon with respect thereto. *State v. Day*, 100 Mo. 242, and authorities cited.

It is next contended that there was no testimony tending to show that the false swearing was in a proceeding over which the justice of the peace before whom the same was pending had jurisdiction, and that this fact could only be shown by the original information filed with the justice. The record shows that at the time it was admitted by counsel for defendant the docket of the justice of the peace before whom the case was tried showed that on the sixteenth day of No-

vember, 1891, there was a certain cause legally pending in which the state of Missouri was plaintiff and James J. Higgins was defendant, on information of the prosecuting attorney of said county, for assault on Daniel W. Ragan, that the same duly and legally came on to be heard, and that the defendant was a witness therein. Under this admission the court could but take judicial notice of the statute which confers jurisdiction on justices of the peace in such cases, and rendered it wholly unnecessary to produce either the original information or the justice's docket, both of which were dispensed with by it. *State ex rel. v. Gates,* 67 Mo. 139.

The first instruction given on the part of the state is assailed. It is as follows:

"The jury are instructed that if they believe from the evidence beyond a reasonable doubt that the defendant James J. Higgins, at Mercer county, Missouri, within three years next before the thirteenth day of September, 1892, was sworn as a witness by P. C. Hampton, a justice of the peace of Mercer county, in a trial before said justice in which the state of Missouri was plaintiff and James J. Higgins was defendant, and that James J. Higgins testified on said trial that if Daniel W. Ragan was at his (Higgins') house on the twenty-eighth day of October, 1891, he did not know it, or words to that effect or meaning the same thing, then said testimony was material and pertinent to the issue in said cause, and if the jury find that said testimony was false and untrue they will find him guilty and assess his punishment at imprisonment in the penitentiary for a term of not less than two nor more than seven years."

It will be observed that in the indictment defendant is charged with having willfully, corruptly and falsely sworn in substance that Daniel W. Ragan was

not on his premises, was not at his dwelling house and that said Ragan was not within his dooryard in said county, while the instruction told the jury that if he testified on said trial that if Daniel W. Ragan was at his, Higgins', house on the twenty-eighth of October, he did not know it, or words to that effect or meaning the same thing, then said testimony was material and pertinent to the issue in said cause, and if they found that said testimony was false and untrue they would find him not guilty. The law in cases of this kind is that any variance in substance between the averments in the indictment and the evidence will be fatal. *State Frisby*, 90 Mo. 530 and authorities cited. And the same rule applies where there is a material variance between the allegations in the indictment with respect to the statements alleged to be false and those set forth in the instructions.

The *gravamen* of the offense was swearing falsely to a material fact willfully and corruptly, that is, knowingly and intentionally. If, therefore, Daniel W. Ragan was on defendant's premises, at his dwelling house, or within his dooryard, and defendant knew it and that fact was a material issue upon the trial before the justice of the peace and he testified that he was not, to his knowledge, then he was guilty of willful and corrupt perjury. The same proof would be just as necessary in the one case as in the other, because if he stated that he was not on his premises knowing that he was there he was guilty of perjury, and if he stated that he was not there to his knowledge when he knew that he was there, then the offense is made out under either view of the case, for at last it all depends upon the presence of Ragan on the premises of defendant and his willfully and corruptly swearing that he was not there at the time stated. We are unable therefore to perceive any substantial variance in the allegations in

the indictment and the language used in the instruction.

But the instruction did not tell the jury, as it should have done, that before they could find the defendant guilty, they must believe from the evidence that he willfully and corruptly testified falsely, which *must* be shown in order to constitute the crime of perjury. To swear falsely unintentionally, or by mistake, is not a felony under our statute, but it must be done willfully and corruptly, that is, knowingly and intentionally. *Regina v. Muscot*, 10 Mod. 192; *Rex v. De Beauvoir*, 7 Car. & P. 17; *Regina v. Moreau*, 11 A. & E. (N. S.) 1028; *Com. v. Cook*, 1 Rob. (Va.) 729; *State v. Lea*, 3 Ala. 602; *Thomas v. State*, 71 Ga. 252; *People v. Dishler*, 38 Hun, 175.

Upon a retrial it would be well to eliminate the words "or words to that effect, or meaning the same thing" from the instruction, as they are misleading in their effect and submit to the jury a question which should be determined by the court. The judgment is reversed and cause remanded. All of this division concur.