## THE STATE v. HARGRAVES, Appellant.

### Division Two, May 16, 1905.

1. **MOTION TO ELECT:** Murder. Where the information charges but one offense, that of willful, deliberate and premeditated murder, although the charge is in four counts, differing only as to the instrument by which the crime was committed, it is not error to refuse to compel the State to elect upon which count it will proceed to trial.

2. **VENUE:** Evidence. A murder was committed in a saloon about fifty yards from the county line, and the witnesses who testified that it was committed in the county where the defendant was convicted, upon cross-examination were unable to state positively where the county line was, but did testify positively

where the recognized line was, and nothing appearing to the contrary, it is held that their testimony is sufficient to support the finding of the jury that the crime was committed in the county where the defendant was prosecuted.

3. **PUBLIC HOUSE: Ejection: Trespasser: Resisting Assault: Instruction.** Where defendant was engaged in a public business, such as keeping a saloon, the deceased, who came there upon the invitation held out to all persons by the character of that business, was not a trespasser, and while it is true that the defendant in such case had the right to close up such business place and request persons who were there to go, yet in order to justify the court in giving an instruction to the effect that defendant had the right to eject deceased from his premises, and to use such force as was reasonably necessary to eject him, it should have been made to appear that the assault made on deceased was made in protection of his premises. If the evidence shows that defendant made the assault upon deceased in an effort to resist an assault on him, such an instruction has no place in the case. Instructions must be predicated upon facts developed at the trial.

Appeal from Bollinger Circuit Court.—*Hon. Robert A. Anthony*, Judge.

AFFIRMED.

. *J. W. Caldwell, J. S. Miller* and *Kitchen & Woody* for appellant.

(1)   Defendant's motion to compel the State to elect upon which count of the information it would proceed to trial against him should have been sustained. This information contains five counts charging the killing to have been done by every manner and means known to the ingenuity of the pleader. Defendant was not apprised of the "nature" and "cause" of the accusation against him. Constitution, art. 2, sec. 22. (2) The instruction asked by defendant at the close of the State's case, which was merely a demurrer to the evidence, should have been given. (2)   The court erred in refusing instruction 14 asked by defendant. Without . this instruction the jury were not advised of defendant's rights in the premises, and it should have been

given. Morgan v. Durfee, 69 Mo. 469; State v. Bartlett, 170 Mo. 669; Runyan v. State, 57 Ind. 84; Beard v. United States, 158 U. S. 561. Even if this instruction, in itself, be erroneous, the court should have properly instructed the jury as to the question therein presented. State v. Moore, 160 Mo. 443; State v. Clark, 147 Mo. 38; State v. Reed, 154 Mo. 122. Defendant was a dramshop keeper and, under the law, it was his duty to conduct an orderly house. R. S. 1899, sec. 2995. (3) The court should have given defendant's instruction 15. Morgan v. Durfee, 69 Mo. 469; State v. Roper, 141 Mo. 327; State v. Pollard, 139 Mo. 220; State v. Hamilton, 170 Mo. 377.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for the State.

(1) There was no error in overruling defendant's motion to require the State to elect on which count it would proceed to trial. But one offense was intended to be charged, and the different counts were framed to meet the evidence as it might develop at the trial. State v. Lanahan, 144 Mo. 31; State v. Porter, 26 Mo. 201; State v. Pitts, 58 Mo. 556; State v. Sutton, 64 Mo. 107. (2) The court did not err in refusing instruction 14, asked by the defendant. This instruction is predicated upon the right of the defendant to protect and control his own property, and that if in so doing Greer assaulted defendant and that defendant, "in defense of his person and the possession of his place of business, used only such force as was reasonably necessary under the circumstances to protect himself from such assault, and in using such force, Greer was killed, then defendant was justifiable and you will acquit him on the ground of self-defense." The plea of self-defense was fully covered by instruction 9, and that instruction included all that was contained in said instruction 14, except that portion of the latter asserting defendant's right of control and defense of his place of business.

Morgan v. Durfee, 69 Mo. 469; State v. Reed, 154 Mo. 122; Com. v. Bullock, 67 S. W. 992. (3) The court properly refused instruction 15. State v. Maher, 132 Mo. 279; State v. Bradford, 156 Mo. 91; State v. Nelson, 166 Mo. 191. This instruction asserts an abstract proposition of law not applicable to the facts of the case, and was therefore properly refused. State v. Stockton, 61 Mo. 382.

FOX, J.—The defendant in this cause was convicted of manslaughter in the fourth degree. The information upon which this prosecution is based charges defendant with murder of the first degree. There were four counts in the information, and the offense was thus charged:

"Comes now Charles G. Revelle, prosecuting attorney within and for the county of Bollinger and State of Missouri, and upon his oath informs the court that one Thomas Hargraves, late of the county and State aforesaid, on or about the 15th day of January, in the year 1904, at and in the county of Bollinger and State of Missouri, in and upon one John Greer, then and there being, feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did make an assault, and with a certain dangerous and deadly weapon, which said weapon is to this affiant unknown, him, the said John Greer, in, upon and about the head and body of him, the said John Greer, then and there feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did strike and beat, giving to the said John Greer at the time and place aforesaid, with the dangerous and deadly weapon aforesaid, in the manner aforesaid, in, upon and about the head and body of him, the said John Greer, several mortal wounds, of which mortal wounds, he, the said John Greer, then and there instantly did die. And so Charles G. Revelle, prosecuting attorney aforesaid, upon his oath aforesaid, does inform the court that the said Thomas Har-

graves, him the said John Greer, in the manner and form aforesaid, by the means aforesaid, at the time and place aforesaid, feloniously, wilfully, deliberately, premeditatedly, and of his malice aforethought did kill and murder; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State.

"And Charles G. Revelle, prosecuting attorney aforesaid, upon his oath aforesaid, does further inform the court that one Thomas Hargraves late of the county and State aforesaid, on or about the 15th day of January, in the year 1904, at and in the county of Bollinger and State of Missouri, in and upon one John Greer then and there being, feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did make an assault and with a certain dangerous and deadly weapon, which said weapon is to this affiant unknown, him the said John Greer, in, upon and about the head and body of him the said John Greer, then and there feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did strike and beat, giving to the said John Greer at the time and place aforesaid, with the dangerous and deadly weapon aforesaid, in the manner aforesaid, in, upon and about the head and body of him, the said John Greer, several mortal wounds, of which said mortal wounds, he, the said John Greer, did languish, and languishing did live from the said 15th day of January, in the year 1904, at and in the said county of Bollinger and State of Missouri, until the 16th day of January, in the year 1904, on which said 16th day of January, in the year 1904, the said John Greer, of the mortal wounds aforesaid, at and in the said county of Bollinger and State of Missouri, died. And so Charles G. Revelle, prosecuting attorney aforesaid, upon his oath aforesaid, does inform the court that one Thomas Hargraves him, the said John Greer, in the manner and form aforesaid, feloniously, and wilfully, deliberately, premeditatedly

and of his malice aforethought, did kill and murder; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State.

"And Charles G. Revelle, prosecuting attorney aforesaid, upon his oath aforesaid, does further inform the court that one Thomas Hargraves, late of the county of Bollinger and State of Missouri, on or about the 15th day of January, in the year 1904, at and in the county of Bollinger and State of Missouri, in and upon one John Greer then and there being, feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did make an assault, and with his hand or hands, him the said John Greer, in, upon and about the head and body of him, the said John Greer, feloniously, wilfully, unlawfully, deliberately, premeditatedly, and of his malice aforethought then and there did strike, beat, wound and bruise, giving to the said John Greer, at the time and place aforesaid, in the manner and by the means aforesaid, in, upon and about the head and body of him the said John Greer, several mortal wounds, of which mortal wounds he, the said John Greer, then and there instantly did die. And so Charles G. Revelle, prosecuting attorney aforesaid, upon his oath aforesaid, does inform the court that one Thomas Hargraves, him, the said John Greer, in the manner and form aforesaid, by the means aforesaid, at the time and place aforesaid, feloniously, wilfully, deliberately, premeditatedly, and of his malice aforethought did kill and murder; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State.

"And Charles G. Revelle, prosecuting attorney aforesaid, upon his oath aforesaid, does further inform the court that one Thomas Hargraves, late of the county and State aforesaid, on or about the 15th day of January, in the year 1904, at and in the county of Bollinger and State of Missouri, in and upon one John

Greer, then and there being feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, did make an assault, and that the said Thomas Hargraves did then and there feloniously, wilfully, deliberately, premeditatedly, and of his malice aforethought fix, clasp and press the hands of him the said Thomas Hargraves, about the neck and throat of him the said John Greer, and did then and there feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought, mortally choke and strangle him, the said John Greer, of which said mortal choking and strangling as aforesaid, the said John Greer then and there instantly did die, and so, Charles G. Revelle prosecuting attorney aforesaid, upon his oath aforesaid, does inform the court that the said Thomas Hargraves, him the said John Greer, in the manner and form aforesaid by means aforesaid, at the time and place aforesaid, feloniously, wilfully, deliberately, premeditatedly and of his malice aforethought did kill and murder; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State.

"And Charles G. Revelle, prosecuting attorney aforesaid, upon his oath aforesaid, does further inform the court that one Thomas Hargraves late of the county and State aforesaid, on or about the 15th day of January, in the year 1904, at and in the county of Bollinger and State of Missouri, in and upon one John Greer, then and there being, feloniously, wilfully, deliberately, premeditatedly, and of his malice aforethought did make an assault, and him the said John Greer in some way and manner and by some means and instruments to this affiant unknown, did then and there feloniously, wilfully, deliberately, premeditatedly, and of his malice aforethought, deprive of life, so that the said John Greer then and there instantly did die; and so Charles G. Revelle, prosecuting attorney, aforesaid, upon his oath aforesaid, does inform the court that the said

Thomas Hargraves, him the said John Greer, in the manner and form aforesaid, at the time and place aforesaid, feloniously, wilfully, deliberately, premeditatedly, and of his malice aforethought, did kill and murder; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State.    CHARLES G. REVELLE,

"Prosecuting Attorney.

"Charles G. Revelle, prosecuting attorney aforesaid, makes oath and says that the facts stated in the foregoing information are true according to his best knowledge and belief.

"CHARLES G. REVELLE,

"Prosecuting Attorney.

"Subscribed and sworn to before me this 14th day of March, in the year 1904.

"(L. S.)        SAM J. McMINN, Clerk.

"By CHAS. O. HOBBS, Deputy."

Defendant filed his motion requesting the court to compel the State to elect upon which count it would proceed to trial. This motion was by the court overruled, to which action of the court proper and timely objections and exceptions were duly made and preserved in the record.

Chris Allers was the only eye-witness to the difficulty, aside from the defendant, and his testimony tends to show substantially the following state of facts:

On the 15th day of January, 1904, the defendant was engaged in the business of dramshop keeper in Bollinger county, in or near the town of Brownwood. This town is situated in Stoddard county, and on the line between the counties of Bollinger and Stoddard. The building in which defendant kept his dramshop, and in which John Greer was killed, was in Bollinger county, about fifty yards from the boundary line. About 9:30 o'clock on the night of the 15th day of January, 1904, John Greer and Chris Allers went to defendant's saloon. There were one or two other persons there be-

sides the defendant, who was tending bar when they arrived. The others soon went away, leaving Greer, Allers and defendant only in the saloon. Greer and Allers sat down and remained there about half an hour. During the time, they each drank two or three or four bottles of beer. The saloon was a small room, about 14 by 14 feet, with a bar about eight feet in length. There was also a stove in the room opposite the bar. After Greer and Allers had been in the saloon about half an hour, the defendant said he wanted to close up, and Allers started home. Just as Allers stepped out he heard loud talking in the saloon and looked back. He saw Greer in front of the bar and the defendant behind. He saw Greer strike at the defendant over the bar with his fist, but did not hit him. The defendant then struck Greer three or four times in the face with his fist and Greer wheeled around and fell on his face. The defendant was close to the end of the bar when this occurred and immediately after striking Greer went around to the end of the bar and had his fist uplifted to strike Greer again. By this time Allers had gotten back in the saloon and speaking to the defendant, said, "Tom, don't do that," and he did not strike. Allers testified that there was some blood at the counter where Greer fell. The defendant and Allers carried Greer out in an unconscious condition and laid him on the porch. Allers then immediately left for home, leaving the defendant and Greer alone at the saloon. There is no further direct testimony as to what occurred there after Allers left, except that of the defendant. He testified that he went home, leaving the body of Greer, not knowing he was dead, where he and Allers placed it on the porch outside of the saloon; that it remained there till the next morning, when he found the corpse where they had left the body the night before.

Two doctors testified as to the wounds inflicted; their testimony is conflicting; however, the testimony

on the part of the State substantially shows that at the post-mortem examination it was disclosed that there was a fracture of the nasal bone running back to the sphenoid bone; an indentation of the frontal bone over the eye; there was a cut over the right eye, through the flesh and into the bone, an inch in length and a half in width, and the tissues hanging down; there was a cut at the base of the right eye, and bruised tissue all over the right side of the face; there were several bruises around over the body and there were marks on his neck two inches in length that resembled finger prints and a dark coagulation of blood under the skin. While the evidence of Allers was that the deceased when struck by the defendant fell with his head near the counter and was carried out to the porch within a minute or two, Harry Wolf testified that there was blood in different places in the room, most of it being in about the middle of the room, and that the floor was damp as though washed and only partially dry when he saw it next day.

About two weeks prior to the difficulty, William Hinnan testified, the defendant stated that he wanted the deceased, Mr. Greer, to start a racket in his place or if he ever started one in there he would thump his face. P. S. Harrel testified that defendant, after the homicide, said to him, "Poor John is dead and gone, and I guess you see which was the best man."

The defendant testified in his own behalf and he thus gives his version of the difficulty. He says: "Mr. Allers and Mr. John Greer came into the saloon something like 9 o'clock, I guess, and they called for a bottle of beer. They taken a bottle apiece and sit there talking and directly they ordered again. They drank that. They sit there and talked and drank some three or four bottles and I had a sick brother at home and wanted to go home and see how he was. I mentioned it was time to close up and Greer said, 'Oh, it is no use to be in a hurry,' or something to that amount, and I

says, 'It is time to go home now.' I wanted to go by my brother's as I went home. I asked him to go again, and he says, 'I will go when I get ready.' I says, 'It seems to me as though you want to raise trouble in my house; you started trouble here once before, and I had to hold you to keep you from hitting a man; I have got to keep order in here.' I stepped around and just as I started to turn around, he wheeled away and struck me and I grabbed him with my left fist. I hit him a couple of licks with my right fist and then hit him with my left fist and let him fall and he fell on his face. I walked up to where he was, and Mr. Allers says, 'Don't hit him any more, as he is bleeding now,' and about that time Mr. Allers says, 'I am going home,' and I says, 'Help me take him outside of the house before you leave.' After we had carried him out, Mr. Allers says, 'I am going home,' and I says, 'Wait until I get my money and I will go with you.' I went in and got my money and blowed the light out and walked out to the railroad and he went around that way. I went straight up to my father's and asked how my brother was and to see if my wife was there and she said she had gone home, so I went on home and went to bed.

"Q. When did you get back again? A. Seven o'clock the next morning. Q. What did you see when you come back the next morning? A. I saw Greer lying there on the porch, and I says, 'John,' and he didn't answer me, and I says 'John,' and again he didn't answer me, so I went back up town, and the first person I met was George Horrell and two or three others and I walked up to him and spoke to him and says, 'Come and go down to the saloon with me, all three of you, John Greer is down there and I believe he is dead,' and I went with them down there and they looked at him and said he was dead."

At the close of the testimony the court instructed the jury and the cause was submitted, and the jury returned their verdict finding the defendant guilty of

manslaughter of the fourth degree and assessing his punishment at imprisonment in the penitentiary for the term of two years.

Judgment was rendered in accordance with the verdict, and after unsuccessful motions for new trial and in arrest of judgment, defendant prosecuted his appeal to this court, and the record is now before us for consideration.

It is unnecessary to reproduce all of the instructions given in this cause. We will give the complaints of appellant as to the instructions due attention in the course of the opinion.

OPINION.

Numerous errors are assigned as reasons for the reversal of this judgment. We will give the complaints of appellant, in the order in which they are presented in the brief, such attention as their importance merit and demand.

I. It is insisted that the court should have sustained the motion of defendant to compel the State to elect upon which count it would proceed to trial. As applicable to this contention, it will be observed that the information charges but one offense, that of the wilful, deliberate and premeditated killing of John Greer. While the charge of murder consists of four counts, but one offense is charged, and the purpose of the different counts is simply to so frame the allegations in the different counts as to meet the evidence which might be developed upon the trial. The proposition involved in this contention is not a new one in this State. In State v. Pitts, 58 Mo. 556; State v. Porter, 26 Mo. 201; and State v. Sutton, 64 Mo. 107, a similar proposition was in judgment before this court and was ruled adversely to the contention of defendant. The rule announced in the cases cited is decisive of the question presented.

II.  It is urged by defendant that the State failed to prove any venue as to the commission of the offense. Upon this contention it will suffice to say that a careful examination of the testimony disclosed by the record shows that there is ample proof as to the county and State in which this offense was alleged to have been committed.  It may be said that the witnesses who testified that this difficulty occurred in Bollinger county, Missouri, upon cross-examination were unable to state positively where the lines between Stoddard and Bollinger counties were located, yet they testified fully as to where the recognized lines were and nothing appearing to the contrary, such evidence must be treated as sufficient to support the finding of the jury as to that particular issue.

III.  Learned counsel for appellant insist that the trial court committed error upon the refusal of instructions numbered 14 and 15 requested by defendant. The refused instructions were as follows: ·

"14.  If the jury find and believe from the evidence that the deceased, John Greer, was in the saloon of defendant on the night of January 15, 1904, and defendant announced that it was time to close up, then you are instructed that it was the duty of said Greer to get out and allow defendant to close up; and if the jury believe from the evidence that the said Greer remained, instead of leaving, refused to leave, assaulted defendant and struck at him with his fist in a violent and threatening manner, and that defendant, in defense of his person and the possession of his place of business, used only such force as was reasonably necessary under the circumstances to protect himself from such assault, and in using such force, Greer was killed, then defendant was justifiable and you will acquit him on the ground of self-defense.

"15.  The court instructs the jury that in law every man has charge of his own house, as well as his own

shop, store or place of business, and the right to defend one's dwelling or place of business is in some sense superior to that of the defense of his person; for in the latter case it is frequently the duty of the assaulted to flee, if the fierceness of the assault will permit; while in the former a man assaulted in his dwelling or place of business is not obliged to retreat, but may stand his ground, defend his possession, and use such means as are absolutely necessary to repel the assailant from his house, even to the taking of life.''

It is apparent that these declarations were requested upon the theory that the deceased was a trespasser and that the defendant was undertaking to eject him from his premises and, therefore, had the right to use such force as was reasonably necessary under the circumstances to eject him from his premises. It is fundamental that instructions in criminal cases must be predicated upon the facts developed in the trial. The deceased in this case was no trespasser; the defendant was engaged in a public business, the character of which was an invitation to all persons who so desired to enter. While it is true that the defendant had the right to close up his place of business and request persons who were there to go, and that he did, according to his testimony, request the deceased to go, yet there is an entire absence of any testimony showing that the assault upon the deceased was made in an effort to eject him from the premises or for the reason that he did not leave the premises upon being requested, but it clearly appears from the testimony that the assault made by the defendant upon the deceased was in repelling or resisting an assault made by the deceased upon him. The facts in this case do not present that character of struggle where an assault is made in protection or defense of his home or premises, nor in an effort to eject a trespasser from the premises of another, in which the party would have the right to use all the necessary force to accomplish his purpose.

It is clear that the assault by the defendant upon the deceased was made in repelling an assault made by the deceased upon him, and the fatal blows were inflicted upon the deceased prior to any attempt to eject him, other than a mere casual conversation about the deceased leaving the saloon. The evidence in this case does not even tend to show that the assault made upon the deceased was in the defense of the possession of the property of defendant, nor that it was made in a lawful effort to eject him from such property.

Numerous cases are cited by appellant in support of the instructions requested, but an examination of those cases demonstrate that the facts as developed in those cases were entirely different to the facts developed in the case at bar; hence are not applicable to the controverted proposition now being discussed. It is sufficient to say of the cases cited that they correctly announce the well-recognized principle that a party has a right to protect his premises and eject an intruder or trespasser and to use reasonably necessary force to accomplish the purpose, and if a party, in resisting the efforts to compel him to leave the premises, is slain, it is the duty of the court to cover such state of facts by an appropriate instruction, and if such state of facts were found to be true, it would constitute a valid defense to the charge of murder or any other grade of homicide. The trouble and dispute in the saloon between the deceased and the defendant was not out of the usual and ordinary difficulties which frequently occur in such places, hence the often-approved instructions given by the court of the right of self-defense in this case fully covered all the facts developed at the trial and there was no error in refusing the instructions requested.

We have carefully considered all the testimony disclosed by the record, as well as the instructions of the court predicated upon such testimony, and have

reached the conclusion that the evidence fully supports the finding of the jury, and that the court fully and correctly declared the law applicable to the facts in this case. The witnesses were before the jury and they had opportunities to judge of their credibility and of the weight to be attached to their testimony which are not afforded the appellate court. It was specially their province to determine the disputed facts presented to them upon the trial, and finding no error in the declarations of law, we are unwilling to retry this case upon the facts as disclosed by the record.

This conclusion results in the affirmance of the judgment of the trial court, and it is so ordered.

*Gantt, J.,* concurs; *Burgess, P. J.,.* absent.