**STATE of Missouri, Respondent,**

v.

**Joe Lee TELLIS, Appellant.**

No. 46209.

Supreme Court of Missouri,
Division No. 2.

March 10, 1958.

Mark M. Hennelly, F. Neil Aschemeyer, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Richard R. Nacy, Jr., Sp. Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

Joe Lee Tellis was found guilty of an assault on James Russell with intent to do great bodily harm, and sentenced to two years' imprisonment in accord with the verdict of the jury. He appeals and raises issues respecting the evidence and instructions.

James Russell, a widower, met Eva Johnson in January, 1956. Eva told him she was not married. They started keeping company. Eva was, in fact, the wife of Joe Tellis, defendant, but they had been separated for several months, during which time defendant stayed with relatives or had a room at a friend's, Mary Rich, 4305 Delmar, for four or five months, to whom he gave some money. We understand Eva had previously married a Mr. Johnson, and had a child by him. Eva lived at 3846 Labadie, St. Louis, Missouri. Russell lived at 4203 Evans. Russell and Eva visited each other.

Russell and defendant agree that they talked to each other. Each stated the other made threats against him. Defendant testified he told Russell: "I want you to quit calling over there." "I want to catch you at my house." Russell testified he never threatened defendant; that he told defendant if Eva was defendant's wife, he would not speak to her again; that defendant never said Eva was his wife, and that Eva told him defendant had been her boy friend but they had quit.

Eva lived in a four- or five-room flat, with a sun porch at the rear. A 35-foot hallway led from the front door to the bathroom, and one turned east just before reaching the bathroom to enter the kitchen.

On Monday, April 10, 1956, between 6:00 and 7:00 p.m. according to Russell, Eva telephoned and asked him for money for the gas bill, saying she would be in the kitchen and for him to come to the back door. When he arrived, Eva admitted him to the kitchen. She was playing solitaire at one end of the table. He sat down and placed $14 in bills on the table. The doorbell rang soon thereafter. Eva put the money in her housecoat and answered the door. Russell did not hear anyone coming down the hall. Eva walked into the kitchen and Russell, still sitting at the table, saw defendant behind her with a gun in his hand. Defendant ordered Russell out of the house. Russell stood up to go from the kitchen into the bedroom and out the front door, where he had only one door to open rather than out of the kitchen door and then through the sun porch door. When Russell stood up and turned to go, defendant stepped from behind Eva and without giving him a chance to get out and while he was within ten feet of him, shot him. The bullet struck Russell in the chest, passing through his body sideways and the upper part of his right arm. The shot affected Russell's eyesight and he went into the bedroom and into a clothes closet. He turned back out of the closet and by that time defendant was at the door between the bedroom and the kitchen and shot at him again, but missed. Russell ran to the front of the flat and Eva, who was there, opened the door and let him out. He was severely wounded and was taken to the hospital by the police.

Evidence on behalf of defendant was to the following effect.

Eva testified she and defendant had been separated for eight or nine months; and they started living together again about two weeks after the shooting; that defendant came to her house about 11:00 p. m. Monday, April 9th, spent the night there and took her to work in the morning; that she told Russell she was married; and that she had not invited Russell to her house on April 10th. Defendant's hours of work were from 3:30 p.m. to 12:30 a.m.

Eva, upon admitting defendant, preceded him down the hall and did not see a gun. Defendant stated he did not then have a gun. When defendant walked into the kitchen he saw Russell sitting at the table and ordered him to leave. Russell got up, put his right hand in his pocket, started toward defendant, cursed him, and grabbed

Eva with his left hand. Eva testified that when Russell grabbed her, she got back out of the way, looked at defendant, and by that time defendant had fired. She did not hear Russell say anything. Defendant feared for his safety and life. He testified he backed into the hall and commenced reaching for his automatic pistol; that his gun was in the back bedroom under some books on a table; that he stepped in, got it, and shot Russell, who turned and went from the kitchen to the bedroom and into a closet. Defendant stated he was pretty sure his shot hit Russell in the right shoulder and Russell could not get his hand out of his pocket, but he shot again because Russell had his hand in his pocket and was coming toward him when he came out of the closet.

Defendant, after throwing his gun in the Mississippi river, surrendered and was questioned by officers Thomas Lawless and Robert Connell. Defendant's statement, without detailing it, was to the effect Russell had threatened to get rid of him and he was afraid the threat would be carried out; that upon entering the kitchen, he saw Russell seated; that Russell called him several dirty names and wanted to know what he was doing there, and that he then drew his pistol from his waistband and shot Russell. He did not tell the officers that Russell had pulled or jerked his wife, or had advanced upon him in a threatening manner.

Russell testified that he did not have his hand in his pocket, had no weapon with him, and did not say a word to defendant.

Russell was 47 years old, five feet nine inches tall, and weighed 165 pounds. Defendant was 36 years old, six feet one inch tall, and weighed 205 pounds.

■ During the cross-examination of officer Lawless by defendant's counsel, the following occurred: "Q. * * * And were these questions and answers reduced to writing? A. No, sir. Q. Sir? A. He refused to make a statement, a written statement." Defendant's counsel asked

"for a mistrial in view of the answer not being responsive to the question, and a voluntary statement on his part."

After a discussion out of the hearing of the jury, the court informed the attorneys a mistrial was not required; and at defendant's counsel's request, following the court's mention that a mistrial only had been asked, the court instructed the jury to disregard the officer's statement and not take it into consideration in their deliberations and instructed the witness to answer the questions directly and not enlarge upon them.

Whereupon the witness testified defendant's statements were oral, were not taken down in question and answer form by a shorthand reporter but had been incorporated into the police report.

This is not a case where the defendant remained silent while under arrest and the State's attorney adduced evidence thereof on the theory of an incriminating admission by silence, as in the State v. Allen cases, Mo., 235 S.W.2d 294, 296 and 363 Mo. 467, 251 S.W.2d 659, 662; State v. Dowling, 348 Mo. 589, 154 S.W.2d 749, 755; State v. Bowdry, 346 Mo. 1090, 145 S.W.2d 127, 129 [5]. The direct examination of the witness indicated he was testifying to oral questions and answers. The witness' first answer to defendant's counsel was responsive and direct; and his response to counsel's "Sir?" was not a showing of silence by defendant of incriminating facts. In addition the court instructed the jury to not consider the answer in their deliberations. We find no error in the court's ruling. Consult State v. Smith, Mo., 261 S.W.2d 50, 56 [8]; State v. Miller, 364 Mo. 320, 261 S.W.2d 103, 108 [7]; State v. Battles, 357 Mo. 1223, 212 S.W.2d 753, 757 [6–11].

■■ Defendant complains of the given instruction on the right of defendant to protect himself or his wife from death or great personal injury. The instruction is lengthy and we do not set it out. We understand defendant's position to be that excerpts from the instruction, quoted infra, tended to shift the burden of proof to de-

fendant, and that the instruction should have been coupled with a specific instruction on reasonable doubt as to said defenses. These excerpts are:

"The Court instructs the jury that the right to defend one's self or his wife from danger is a right to which a person may have recourse under certain circumstances and conditions, in order to prevent an apprehended injury to himself or his wife by another. * * *

"Although defendant may really have believed himself or his wife to be in danger, yet he cannot be acquitted on the ground of self defense or defense of his wife unless it further appears from the evidence that he had reasonable cause for such belief. * * *

"If you believe from the evidence that the defendant shot at James Russell unnecessarily when he did not have reasonable cause to believe that James Russell was about to kill him or his wife, or do him or his wife some great personal injury, then there is no self defense or defense of his wife in the case and you cannot acquit the defendant on that ground."

Defendant cites State v. Davis, 342 Mo. 594, 116 S.W.2d 110, 112 [4–6], and State v. Robinson, Mo., 255 S.W.2d 798, 799 [2, 3]. Defendant's criticisms are not well taken for several reasons. The instant instruction, in the quoted excerpts or elsewhere, did not require the jury to find that a submitted defense was *"established by the evidence"* in the case, as did the instructions in the Davis and Robinson cases, or that the jury *"ought to be satisfied"* that defendant's cause of fear was reasonable as in the Robinson case.

■ An instruction is to be read as a whole and all instructions are to be construed together. The court properly instructed on the presumption of defendant's innocence, reasonable doubt, and that the burden rested with the State to establish defendant's guilt to the satisfaction of the jury and beyond a reasonable doubt. This

has been held sufficient. State v. Dill, Mo., 282 S.W.2d 456, 460 [4, 5] and cases cited; State v. Malone, 333 Mo. 594, 62 S.W.2d 909, 911 [4]. See also with respect to the approval of one or more of the quoted excerpts from the instruction, State v. King, 203 Mo. 560, 567(3), 102 S.W. 515, 517(3); State v. McCollum, 119 Mo. 469, 475, 24 S.W. 1021, 1023 (instruction No. 8); State v. Maupin, 196 Mo. 164, 175, 93 S.W. 379, 383 (instruction No. 7); State v. McKenzie, 177 Mo. 699, 715, 76 S.W. 1015, 1020 (instructions Nos. 5 and 6); State v. Havens, Mo., 177 S.W.2d 625, 628 [9, 10]. Consult the statute on justifiable homicide. § 559.-040. (Statutory references are to RSMo 1949 and V.A.M.S.) Defendant's prima facie showing of the stated defenses presented a fact issue to be determined by the jury under instructions by the court. The instruction did not assume, as asserted by defendant, that defendant shot Russell.

■ Defendant alleges error because the court failed to instruct on the defense of habitation as part of the law of the case. Sup.Ct. R. 26.02(6), 42 V.A.M.S. (§ 546.-070(4)). He states in his motion for new trial that the court erred in failing to give "an instruction authorizing an acquittal on the ground that he was defending his home, the occurrence having taken place in his home, in veiw of the testimony that the witness Russell ran against the door and he told him 'don't break that door.'"

Following defendant's shooting at Russell in the kitchen and bedroom, Russell went into the hall and toward the front door. The issue in the motion for new trial is based upon defendant's testimony that he had a big glass door at the front of the hall and Russell: "At first, he ran against the door. I told him, 'Don't you break that door.' Then my wife, she opened the door and let him out."

■■ A motion for new trial must set forth in detail and with particularity the specific grounds or causes therefor. Sup. Ct.R. 27.20, § 547.030; State v. Thompson, Mo., 29 S.W.2d 67, 70 [7]; State v. Ellis,

Mo., 159 S.W.2d 675, 676 [5]; State v. Tebbe, Mo.App., 249 S.W.2d 172, 174. "Reasons urged in a brief not assigned in a motion for new trial are of no avail." State v. Hampton, Mo., 275 S.W.2d 356, 359 [8]; State v. Davis, Mo., 251 S.W.2d 610, 616 [5, 6]; State v. Smith, Mo., 261 S.W.2d 50, 57 [10]. The foregoing applies to the law of the case. State v. Burnett, Banc, 365 Mo. 1060, 293 S.W.2d 335, 343 [15]; State v. Ellis, supra; State v. Foster, 355 Mo. 577, 197 S.W.2d 313, 318 [5]; State v. Vigus, Mo., 66 S.W.2d 854, 856 [5]; State v. Reagan, Mo., 108 S.W.2d 391, 395 [5, 6].

■ As stated, the court instructed on the defendant's right of self defense and the defense of his wife. Russell was shot by defendant before he reached the hall, and it is apparent defendant did not shoot him for any real or fancied damage to the front door in Russell's efforts to escape further injury by defendant. An instruction on the defense of habitation is properly refused when not supported by the issues and evidence in the case. State v. Hargraves, 188 Mo. 337, 351, 87 S.W. 491, 495; State v. Dollarhide, 337 Mo. 962, 87 S.W.2d 156, 159 [5]; 41 C.J.S. Homicide § 386, p. 192, § 386(a), n. 2; 4 Warren, Homicide, 301, § 340.

We have examined the record and find no error respecting the information, verdict, judgment and sentence, or other matter formerly of the record proper.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

STORCKMAN, P. J., EAGER, J., and HUNTER, Special Judge, concur.

LEEDY, J., not sitting.