State v. Martin.

THE STATE, Respondent, v. MARTIN, Appellant.

1. A. was indicted for stealing certain cattle alleged in the indictment to be the property of B. At the trial, one C., who had been summoned as a juror, stated, upon his *voir dire*, that he knew the cattle alleged to have been stolen; that his brother had once owned them, and had sold them to one K., who had sold them to B. *Held*—the allegation as to B.'s ownership not being controverted—that C. was a competent juror.

2. Although cattle may have wandered away from the owner's enclosure, and the owner may not know where they are, yet if another coming across them drives them off and converts them feloniously to his own use, he is none the less guilty of larceny because he is ignorant of their true owner and their owner may not know where they are; the ownership draws along with it the possession under such circumstances.

3. Hearsay testimony is inadmissible in evidence.

4. Where declarations or statements made by an accused person are admitted in evidence against him, he has a right to insist that the whole of his statements and not a portion merely shall go before a jury; what credit shall be attached to the whole, or any part thereof, is a matter exclusively for the jury.

*Appeal from Benton Circuit Court.*

This was an indictment for grand larceny. The indictment charged the defendant, William Z. Martin, with feloniously stealing two oxen, the property of Stephen L. Cheatham. The court gave the following instructions at the instance of the prosecution: "1. If the jury believe from the evidence that said Cheatham was the owner and possessed of the cattle mentioned in the indictment, and that defendant knowingly took and drove them away, in Benton county, against the consent of said owner, without any claim of right, and with the intent to deprive said owner of them and to convert and appropriate them to his own use, and thereby to defraud said owner of them, they will find him guilty. 2. If the jury believe from the evidence that said Cheatham was the owner of the cattle and that they strayed away from him and went to Mr. Baker's, and while they were at Baker's and at the time defendant took and drove them away (if he did so) said Cheatham was still the owner of them, then the said ownership drew to said Cheatham the

State v. Martin.

possession, and the defendant is not the less guilty from the fact of having taken them at said Baker's, nor from the mere fact of their having so strayed away, if the facts otherwise fix his guilt."

The court gave certain instructions asked by defendant, but refused the following: " 7. If the jury shall believe from the evidence that the cattle had strayed away from Cheatham before he moved away from the place the cattle strayed from, and that Cheatham afterwards moved six or seven miles from that place, and that Cheatham did not know where they were, yet, although the defendant may have been the person who took the cattle, it was not a felonious taking of the cattle from Cheatham's possession. 8. Whenever the declarations of the defendant are given in evidence to establish a fact against him, and his declarations when proved tend to prove a fact in his favor, whatever he said in his own favor should be taken as true unless it is disproved by other evidence in the cause. 9. If the jury shall believe from the evidence that the cattle strayed away from Cheatham, and he did not know where they were, and that they were running about the premises of the witness Baker, and that it was not known who was the owner of them, and that there were no marks about them so that the owner could be known, they were lost property within the meaning of the law. 10. If the jury shall believe from the evidence that Cheatham lost the cattle out of his possession and that defendant found them and did not know the owner of the same, and, believing that they were lost, took them openly in the day time, they should acquit him. 11. If the jury shall find from the evidence that the cattle had been lost out of the possession of Cheatham for a considerable length of time, the defendant is not required to prove how he came into the possession of the property to disprove any presumption of guilt."

*Johnson & Ballow*, for appellant.

I. The court erred in determining that Gallaher was a

competent juror. He had formed an opinion on a material fact to be tried. He *knew* the cattle to be Cheatham's.

II. The court erred in refusing to admit the testimony as to Kendrick's admissions; also in giving the second instruction asked by the state. (See State v. Conway, 18 Mo. 321.) The instruction was calculated to mislead the jury. The property had strayed away; it was lost to the owner. (3 Chitt. C. L. 916.) The court should have given the seventh instruction asked by defendant. Defendant could not be convicted of grand larceny for taking stray cattle. He could only be indicted under the act concerning strays. (R. C. 1855, p. 1511, § 33, 34.) At most he could only be indicted under section fifty of article three of the act concerning crimes and punishments, (R. C. 1855, p. 582,) or under the act concerning strays. The court should have given the eighth instruction. (1 Greenl. Ev. § 218; 2 Carr. & Pag. 629.) The court should have given the ninth and tenth instructions. (18 Mo. 321.) So also the eleventh. Cheatham had lost the cattle. They had been out of Cheatham's possession at least three months before they were found in Martin's. (See 15 Mo. 168; 12 Ill. 259.) The court should have sustained the motion in arrest. The property is not described in the language of the statute.

*Ewing*, (attorney general,) for the State.

I. Gallaher was a competent juror. When a juror qualifies himself under the statute and the court below accepts him, this court can not say error was committed. (Baldwin v. State, 12 Mo. 226.) There was no error in excluding the testimony as to one Hendrick's admissions. The instructions given presented the law arising upon the facts properly to the jury. (2 Har. 530; Whart. 651; 2 Tyler, 399, 387.) Our statute concerning lost property would seem not to apply to domestic animals. Such animals when strayed are not considered as lost. The seventh instruction asked by defendant was properly refused. It withdrew from the jury the question of felonious intent, and restricted the issue to

the single question of knowledge on the part of Cheatham as to where the cattle were when taken by defendant. The penalty in the thirty-third and thirty-fourth sections of the stray law is cumulative, and for an offence not amounting to larceny. The penalty is for a conversion of the stray after it has been taken up and posted. There could be no larceny in such a case, because the original taking and possession were lawful. The eighth instruction was properly refused. (Wharton C. L. 320; 9 Leigh, 635.) So the ninth and tenth instructions were properly refused, for the reasons that rendered it proper to give the second instruction. The indictment is sufficient. (22 Mo. 453.)

NAPTON, Judge, delivered the opinion of the court.

The first point presented by the record relates to the competency of the juror Gallaher, who, upon his *voir dire*, stated that he knew the cattle alleged to have been stolen; that his brother had once owned them and had sold them to a man named Kerr, who had subsequently sold them to Cheatham, the person alleged in the indictment to be their owner. This juror the court declared competent, and the defendant was compelled to get rid of him by a peremptory challenge, so that, although the juror did not sit in the case, the question of his competency may be considered as fairly before this court, seeing that the circuit court deprived the accused of one peremptory challenge to which he was entitled if the juror be held incompetent.

Our statute provides that "it shall be a good cause of challenge to a juror, that he has formed or delivered an opinion upon the issue, or any material fact, to be tried." (R. C. 1855, p. 1191.) No question has heretofore arisen upon the construction of this provision of our criminal practice act; nor have we observed any case in any other state, where similar statutes have been passed upon by their courts. Ordinarily, there can not be much practical difficulty in enforcing what seems to be the spirit and object of the provision, which is to secure impartial juries; and when questions of

doubtful character arise, the courts of criminal jurisdiction—as a matter of convenience and precaution, and with a view to avoid the possibility of subjecting the state to unnecessary cost, as well to secure to the accused every reasonable satisfaction in selecting his triers—would usually set aside persons of questionable competency, when a bystander could be called in without delay, who would be unexceptionable to all parties. It is probably because of this practice on the circuits—and a very commendable one, too—that no cases of this sort have ever come up to this court. We will, of course, not be understood as casting any censure upon the court, which tried this case, for not avoiding the question presented here by calling up another juror; for there may have been very good reasons, which influenced the action of the court, not at all apparent to this court on the record. We merely allude to the usual practice on the circuits as the probable reason why such questions have never reached this court.

The general object of the law under consideration is undoubtedly to secure impartial juries. To what extent, however, it was intended to embrace allegations in indictments, which are formally necessary and which are in some sense material to be made and proved, is a matter of some embarrassment. There must, we think, be some qualification placed upon the term "material," to enable justice to be administered without great inconvenience. What that qualification ought to be, and what class and character of allegations of facts may be considered immaterial within the proper meaning of the statute, is not so easy to define. It is more easy to decide cases as they arise than to lay down in terms any fixed or clear rule to govern all which may occur. Venue is necessary to be laid and proved in every indictment for crime. It is material to the prosecution to establish that the crime alleged was committed at a place within the county, for this is essential to the jurisdiction of the court. Does the knowledge that the alleged locality of an offence is within the county named in the indictment disqual-

State v. Martin.

ify a juror from sitting on the case ? We see at once that this fact, material as it undoubtedly is to the success of the prosecution, has no connexion whatever with the guilt or innocence of the party accused, and that it is a fact known probably to nine-tenths of the inhabitants of the county, and therefore in all probability will not be controverted on the trial. In an indictment for murder, the fact of the killing is an essential of crime ; but would a man, who accidentally was present at the burial of the murdered person and saw his dead body, and knew him when alive, be excluded as an incompetent juror on the trial of the supposed manslayer ?. Such facts as we have referred to are material in one sense. They constitute the basis of the prosecution ; but they are independent facts, having no bearing on the question to be tried of the guilt or innocence of the accused. They are just as consistent with the guilt of any other person as they would be with the guilt of the accused ; and their establishment does not make a single step toward a conviction. If these facts are controverted facts, it may be that a person who has formed an opinion upon them ought to be excluded from sitting on the jury ; but, where they have no bearing on the guilt of the accused and are likewise not controverted on the trial, it is plain that the juror is, in every material respect, impartial and competent.

In the present case it is sufficient to decide the point presented, without undertaking to lay down a general rule by which the materiality of all issues are to be tested. The juror Gallaher had simply a knowledge of the identity of the cattle alleged to have been stolen. He also knew or believed they had at one time belonged to Cheatham, the person in whom the property was laid in the indictment. Whether Cheatham owned the property at the time of the taking or of the trial, it does not appear that the juror had any information. But if it had so appeared, the question would not be materially changed ; for this court is not called upon, as the circuit court was, to pass upon the competency of Gallaher without any information as to what issues would be

controverted in the cause, except such as was furnished by the pleadings; but we are called upon, after the trial and verdict and with the record of all the proceedings before us, to say whether the decision of Gallaher's admissibility on the jury was in any way prejudicial to the accused. The fact of the ownership of the cattle by Cheatham, as the record shows, was not a controverted fact upon the trial. There was no dispute about it. If it had been controverted, it was not a fact which had any connexion whatever with his guilt or innocence, although its successful contradiction might have defeated this particular prosecution. Whether the cattle belonged to Cheatham, or to any one else than the defendant himself, was in truth nowise material. It was larceny in the defendant, if the other facts and circumstances in the case so made it out; and the only effect of disproving it was to turn the accused round to another prosecution. But, in this case, the fact was not controverted, and as it had no connexion with the guilt of the accused, which was the issue tried by the jury, we think that Gallaher's competency can not now be disputed; or, in other words, that the decision of the circuit court, declaring him to be competent, affords no ground for reversing the judgment.

The principal ground of defence upon the trial of this case was, that the cattle alleged to have been stolen were not in the possession of the owner, but were estrays; that the owner did not know where they were; that there were no marks or brands upon them by which a stranger could ascertain their ownership; that, in short, they were *lost goods*, and no larceny could be committed by the finder's converting them to his own use. A variety of instructions were asked by the defendant, the object of which was to assert this position; but they were all refused by the court; and the law laid down to the jury by the court was, that the ownership drew along with it the possession so as to make the defendant responsible for stealing if the other circumstances in proof would justify such a conclusion. And this view of the law we take to be the correct one. In East's Criminal Law it is

declared that "where one finds a purse in the highway, which he takes and carries away, it is no felony, although it may be attended with all those circumstances which usually prove a taking with a felonious intent, such as denying or secreting it." (2 East C. L. 99.) The authority, however, qualifies this doctrine so far as to add that he must be understood as speaking of a finder who really believes the goods have been lost by the true owner, and does not color a felonious taking under a mere pretence. He therefore concludes that, where a man's goods are in a place where ordinarily they are, the pretence of finding will not excuse the person converting them to his use.

Without undertaking to say how far this doctrine about lost goods is to be taken as it is laid down in the old books, we dismiss any further consideration of it as inapplicable to this case. Whatever may be the law concerning domestic animals, such as horses and cattle, in England, we do not consider the doctrine of the English criminal lawyers concerning lost goods as applicable to domestic animals in Missouri. It is with no propriety, either in view of custom or statutory law, that animals can be called *lost goods* here simply because they are outside of the owner's enclosures and the owner does not know where they are. Such animals are not *lost* in the proper sense of the term ; nor can the person, who comes across them and feloniously appropriates them to his own use, with any propriety be called the *finder*, as he might be if he, with the same felonious intent, picked up a purse upon the highway. A person does not lose the possession of his horses or cattle here because they may happen to be outside of his enclosures and he may not be able at any given time to lay his hands upon them. They are still in his possession, as much as though they were in his stable or pasture. Nor can it make any difference that they have gone five or ten miles from their ordinary range. The owner is as entirely ignorant of their precise position in the former as in the latter case ; and the fact that they are branded or not branded with the owner's name is perfectly

immaterial. It is sufficient for the person who comes across them to know that they are not his property; and if he drives them off and converts them feloniously to his own use, he is as much guilty of larceny, when he is ignorant of their true owner and their owner is ignorant of where they are, as he would be if both he and the owner had full knowledge on both these points.

Our statute in relation to lost money and goods has no relation to criminal law. It is merely a mode pointed out by which the ownership in such property may be changed, and imposes certain duties upon the finder of the property, which may be discharged or neglected without involving any criminal imputation. The same observation will apply to our stray laws. They have nothing to do with the criminal law, and are merely directory, to promote commerce and afford facilities for the reclamation of stray animals.

The testimony offered by the defence in this case, that one Hendricks admitted he had sold a yoke of oxen to defendant, was properly excluded by the court, because it was hearsay. Hendricks himself should have been called.

Instruction No. 8 was properly refused. That instruction is in these words : " Whenever the declarations of the defendant are given in evidence to establish a fact against him, and his declarations, when proved, tend to prove a fact in his favor, whatever he said in his own favor should be taken as true unless it is disproved by other evidence in the cause." This instruction asserts principles altogether at variance with the established rules of evidence. A party has a right to insist upon the whole of his statements going before a jury, if any portion of them is offered against him, but whether the whole or any part of them will be or ought to be credited by the jury is a matter for the jury exclusively. They may be intrinsically unworthy of credit, or be discredited by other testimony, or the reverse ; but there is no iron rule to be laid down for the guidance of the jury as to what they will believe or what they will not believe. The jury are to judge of the matter and not the court.

The fiftieth section of the third article of the act concerning crimes and punishments had nothing to do with this case. There was no pretence that the defendant had posted the oxen. The question as to the intent in taking the cattle was submitted to the jury upon instructions fully explaining the law of larceny, and enabling them very easily to distinguish a mere neglect of the stray law from a felonious conversion.

Judgment affirmed; the other judges concurring.