THE STATE v. WHITE, *Appellant*.

Division Two, February 12, 1895.

1. **Criminal Practice**: CONTINUANCE.   An application for a continuance, because of the absence of a witness, which states as to the subpœna merely that it was served on ''the ———— day of'' the month in which the case was set for trial is properly overruled.

2. ——: LARCENY: PRESUMPTION: INSTRUCTION. Where the evidence showed that the defendant, charged with the larceny of a pony, knew that the pony was not his, saw it straying, and a few days afterward had possession of, and claimed, it as his own, stating that he had purchased it from an unknown man, the pony's mane and tail being then cut off, it was proper to instruct the jury as to the presumptions arising from recent possession of stolen property.

3. ——: ——: STRAY ANIMAL. The possession of a stray animal follows the true owner, and is as much the subject of larceny as when in the owner's possession.

*Appeal from Barry Circuit Court.*—HON. J. C. LAMSON, Judge.

AFFIRMED.

*J. W. Brunk* and *Cloud & Davies* for appellant.

(1) The trial court abused its discretion in overruling the application for change of venue. *State v. Dawson*, 90 Mo. 149; *State v. Bradley*, 90 Mo. 160; *State v. Maddox*, 117 Mo. 681. (2) The court failed to instruct on all the law applicable to the case. *State v. Taylor*, 118 Mo. 153; *State v. Brown*, 104 Mo. 365; *State v. Moxley*, 102 Mo. 374. (3) The court erred in instructing the jury as to recent possession of stolen property. 2 Bishop on Crim. Proc. [3 Ed.], sec. 739. (4) There was testimony tending to establish defendant's good character, and the court should also have instructed on that fact, as qualifying the presumption arising from the recent possession of stolen property. *State v. Bruin*, 34 Mo. 537.

*R. F. Walker*, Attorney General, for the state.

(1) There was no error committed in the trial of this cause. (2) The proof was ample to sustain the verdict. (3) The instructions given by the court fairly and fully presented the law of grand larceny to the

jury, and none other were necessary. (4) Defendant's instructions are not preserved, and hence can not be considered; if preserved, and exceptions made to their refusal had appeared in the record, it would have availed defendant nothing, because the law, as given, was all that was necessary. (5) The record does not present the objections made and exceptions saved, if any were made and saved, to the overruling of the motion for a new trial; if exceptions had been saved to errors occurring during the trial, they would have been rendered ineffectual by reason of defendant's failure to object and except to the motion for new trial. *State v. Gilmore*, 110 Mo. 7; *Taylor v. Switzler*, 110 Mo. 411; *Wilson v. Haxby*, 76 Mo. 345; *McIrvine v. Thompson*, 81 Mo. 648; *State v. Hitchcock*, 86 Mo. 231; *St. Joseph v. Ensworth*, 65 Mo. 628; *State v. Burkhart*, 83 Mo. 433; *State v. McDonald*, 85 Mo. 539; *State v. Pints*, 64 Mo. 617; *Bateson v. Clark*, 37 Mo. 31.

GANTT, P. J.—The defendant was convicted of grand larceny at the April term, 1894, of the Barry circuit court. He was indicted in Newton county and obtained a change of venue. The indictment is sufficient and the defendant was duly arraigned.

The evidence discloses substantially these facts: Miss Neppie Northcutt was the owner of the horse in question, and lived about eighteen miles east of Neosho. About the last of July, 1892, two of her sisters drove the horse from their home to Neosho, and turned the horse into a lot over night. During the night the horse broke out of the lot. A few days later the pony was seen in a wheat field of Frank Grimes, about six miles south of Neosho. The horse was seen on the range in that neighborhood for a few days, and was supposed to be a stray; and was next seen on the high-

way by some farmers who were threshing wheat in the neighborhood. When the pony came near where they were, one of them, thinking that it resembled a pony belonging to a young man named Leonard White (the defendant), who was present, asked him (White) if it was not his. The next day, at dusk, White was seen passing a farmer's house, riding a black pony and leading another suiting the description of the one that had been seen the day before by the threshers. He hallooed at the farmer and said: "I have been to catch my pony that was lost." Subsequently the defendant was arrested in the Indian Territory with the Northcutt pony in his possession. He said he had traded for it from a man named Daugherty, and willingly gave it up to Northcutt, the brother of the owner, and came back to Missouri with the sheriff.

Defendant testified in his own behalf that he had traded for the pony he was charged with having stolen; that he had bought a horse from the man named Daugherty a short time before, and traded this horse to a stranger for the pony. Neither Daugherty nor the stranger was produced, nor their absence accounted for. One Abe Hooper corroborated defendant's testimony. Defendant was shown to be of bad character, and one witness testified that Hooper was not, at the time of the alleged trade, and had not for some time previously been, in the neighborhood when defendant testified it occurred.

The case came on for trial at the April term, 1894, of the Barry circuit court, upon the day set, when the defendant made application for a continuance, on account of the absence of a witness, Jesse Dixon, who was then alleged to reside and be in Newton county, Missouri, and who had been subpœnaed to appear on that day, alleging that said witness if present, would testify that he saw the mare which the defendant was

accused of stealing, in the possession of some unknown person, a horse trader, at the Prairie Diggings, in Newton county, the place where defendant claimed that he had traded for her, on the day and before he traded for her. Which application was overruled, to which the defendant excepted, and the court immediately ordered and impaneled a jury to try the cause, and, over the objections and exceptions of the defendant, proceeded with the trial.

The defendant's testimony was to the effect that within two or three days after the pony was seen running at large in the neighborhood of Frank Grimes's, and before it was seen in his possession, he traded for the pony with a man who was camped at the Prairie Diggings, who was a horse trader and unknown to him, at which time the pony had its mane and tail shaved, and that he in good faith believed that the person with whom he traded was the owner, and that he had no knowledge or information to the contrary until he was arrested.

At the close of the testimony on the part of the state, the defendant asked the court to instruct the jury to acquit him, which was refused, and defendant excepted.

The court instructed fully on the elements of grand larceny and reasonable doubt, the presumption arising from recent possession of stolen property, the weight and credibility of witnesses, and the competency of defendant as a witness in his own behalf.

The court in its fourth instruction declared the law to be "that although they [the jury] might believe the mare may have wandered from the inclosure of any person, where it was left by the owner or any other person having lawful possession of said mare, and the owner did not know where the said mare was, yet if the defendant coming across said mare, and with

the intent, at the time of taking, to convert her to his own use and deprive the owner of her property, took possession of the said mare and carried her off and feloniously converted her to his own use, he is none the less guilty of larceny because he was ignorant of the true owner; the ownership draws along with it the possession under such circumstances."

I. Defendant assigns as error that the court overruled his application for a continuance. No diligence was shown. The affidavit nowhere discloses when the subpoena was issued or when served. It simply states that it was duly served on "the —— day of April." For aught that appears, it may have been on the very day of the trial or the day before. It does show the witness was living in a different county, and his deposition might have been taken. Due diligence requires that a party shall promptly issue his process for his witnesses. No attachment was asked for the witness, and we think no error was committed in denying the continuance upon this showing. The abuse of discretion by the trial court should clearly appear to authorize us in reversing it for refusing a continuance. *State v. Andrew*, 76 Mo. 101.

II. The court instructed upon every phase of the case. There was no error in instructing on the recent possession of stolen property. It is perfectly clear that the defendant knew the pony was not his; that he saw it straying; that in a few days he was seen in possession of it and was claiming it as his own; that the horse was roached and its tail cut off. The unsatisfactory story of the purchase from an unknown man together with his knowledge that it was a stray, were sufficient to call upon him to explain his possession of another's horse. The instruction of the court left his explanation to the jury and it was not satisfactory to that body.

There was no error in the fourth instruction.   The possession followed the true owner, and it is as much a crime to steal an animal  that has  strayed as to  take it from the owner's barn.

There was no error in refusing defendant's instructions.   The case was  fairly  submitted to the jury and the judgment is  affirmed.   BURGESS,  and SHERWOOD, JJ., concur.