STATE v. EDWARD S. SMITH, Appellant.—No. 39515.—193 S. W. (2d) 499.

Division Two, February 11, 1946.

Rehearing Denied, April 8, 1946.

*B. J. Creech* for appellant.

1090

*J. E. Taylor*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

1092

TIPTON, J.—Appellant was convicted of the crime of grand larceny of neat cattle in the circuit court of Lincoln County, Missouri, and his punishment was assessed at two years' imprisonment in the state penitentiary. From that judgment and sentence he has duly appealed.

The evidence discloses that two white-faced muley heifers weighing between 700 and 750 pounds had strayed from the farm of George Nassar on December 5, 1943. George Nassar, the owner of these two heifers, saw them on his farm on December 5, 1943, and he missed them from his farm on December 8, 1943. The state had testimony that these two heifers were seen in a public road a short distance from a farm which appellant rented. Appellant testified that these heifers had frequently trespassed upon the land he had rented, and on December 5, 1943, they again were upon this land; and that about 4:00 o'clock P. M. of that day while the two heifers were trespassing upon his land he and Earl Nichols impounded them in a pig pen located in back of the house which was near a public road.

Due to the fact that these were rogue heifers and had frequently trespassed upon his crop lands, appellant decided while eating supper that he would sell them. About 7:30 o'clock P. M. of that day, appellant drove to Truxton, Missouri, and engaged Edward Sheppard, a trucker, to take these heifers to the St. Louis market. On December 6, 1943, Sheppard loaded them from the pig pen and delivered them to the Mississippi Valley Stock Yards in St. Louis, Missouri, where they were sold on December 7, 1943, for $130.21. A check payable to appellant for that sum was cashed by him at the Silex Banking Company at Silex, Missouri.

It was shown by stipulation that Lincoln County had adopted Chapter 103, Article 6, Revised Statutes of Missouri, 1939. This article provides that it shall be unlawful for the owner of any animal to permit it to run outside the enclosure of the owner, and if it was running at large it would be lawful for any person to restrain the animal forthwith. The article further provides that a person restraining the animal shall, within three days, give notice to the owner if known, and owner shall pay the person for taking it up, keeping and feeding such animal and pay all damage by reason of such animal's running at large.

It is the contention of appellant that if any crime had been committed by him it was not grand larceny, but the conversion of lost property.

Other pertinent facts will be discussed later.

■ Appellant contends that since the information alleges the crime of grand larceny as of December 6, 1943, and the court's instruction required the jury to find that the crime was committed as of that date, he could not be guilty of grand larceny as charged. Appellant's position is that since he took the cattle up on December 5, with no intention to steal at that moment, then he could not be convicted of grand larceny under Section 4456, R. S. Mo., 1939, because the trespass occurred on December 5 and the intent to steal did not come into existence until December 6. For that reason he contends he should have been prosecuted under Section 4466, R. S. Mo., 1939, which ■ makes it a crime for any person to convert property of another which has been lost.

Appellant testified that these two heifers strayed onto the land he had rented on December 5, 1943, and under Section 14463, R. S. Mo., 1939, which was in effect in Lincoln County, he had a right to impound them and, therefore, he was lawfully in possession of these heifers on December 5. However, the state's witness, John Norton, testified that on December 5, 1943, he had been visiting Joe Schramek. He started home in the afternoon, traveling on the public road in a southerly direction, and saw two white-faced heifers weighing about 750 pounds each in this road. After passing these heifers he saw appellant and Nichols walking toward them on the same road. At that time appellant and Nichols were about one-quarter of a mile from them and it was then about 4:30 o'clock P. M.

From these facts and circumstances, the jury had a right to infer that appellant and Nichols drove these two heifers from the public road onto appellant's rented place and penned them up, and to reject appellant's testimony that these heifers strayed onto the farm he had rented, if that fact is material. Animals which have strayed from the owner's enclosure are not lost property.

"A person does not lose the possession of his horses or cattle here because they may happen to be outside of his enclosures and he may

not be able at any given time to lay his hands upon them. They are still in his possession, as much as though they were in his stable or pasture. Nor can it make any difference that they have gone five or ten miles from their ordinary range. The owner is as entirely ignorant of their precise position in the former as in the latter case; and the fact that they are branded or not branded with the owner's name is perfectly immaterial. It is sufficient for the person who comes across them to know that they are not his property; and if he drives them off and converts them feloniously to his own use, he is as much guilty of larceny, when he is ignorant of their true owner and their owner is ignorant of where they are, as he would be if both he and the owner had full knowledge on both these points." State v. Martin, 28 Mo. 530, l. c. 537-538. See also State v. Collins, 292 Mo. 102, 237 S. W. 516.

"The possession followed the true owner, and it is as much a crime to steal an animal that has strayed as to take it from the owner's barn." State v. White, 126 Mo. 591, l. c. 597, 29 S. W. 591.

The possession of these strayed heifers was at all times in the owner, George Nassar. The essence of a larceny charge is that the owner be deprived of his property. State v. Nichols, 130 S. W. (2d) 485. In the case at bar, there is no denial that George Nassar was deprived of his two heifers.

It follows that appellant committed the crime of grand larceny as defined by Section 4456, supra, and, therefore, could not have been guilty of converting lost property as defined under Section 4466, supra.

■ Nor do we think that the fact the evidence shows that the larceny of these heifers took place on December 5, 1943, while the information charges that the larceny took place on December 6, 1943, and the court's instructions required the jury to find the larceny took place on December 6, 1943, prejudiced the rights of appellant for the reason that time was not the essence of the offense in this case. Therefore, under Section 3952, R. S. Mo., 1939, appellant was not prejudiced.

It follows from what we have said that the trial court properly refused appellant's demurrer to the evidence.

■ Prior to the time appellant's alleged written confession was offered in evidence, he twice requested the trial court to conduct a preliminary examination to determine if the confession was voluntary, which the trial court refused. This was error. The rule in this state is that if a defendant objects to the admission of a confession on the ground that it was involuntary and requests a preliminary examination it must be granted. State v. Gibilterra, 342 Mo. 577, 116 S. W. (2d) 88; State v. Di Stefano, 152 S. W. (2d) 20. The reason for this rule is that it becomes the duty of the trial judge to hear and consider all competent evidence offered on the question as a basis for determining,

in the first instance, whether it shall go before the jury. State v. Menz, 341 Mo. 74, 106 S. W. (2d) 440.

Herbert Sobolewski, a state trooper, testified that appellant was taken from the jail to the sheriff's office, and that he asked appellant "if he would make a statement with reference to the shipping of these cattle, and he said he would make a voluntary statement. The statement was made and taken down."

The substance of appellant's statement is as follows: During the month of November, 1943, there were two red white-faced heifers in his wheat and corn field; he made inquiry among his neighbors as to the ownership of these cattle and none of them knew to whom they belonged; he made arrangements with Edward Sheppard to haul the cattle to the Leo Hardy Commission Co., St. Louis, Missouri, and on December 6, 1943, Sheppard did take these cattle to St. Louis; he received a check for $130.21 for these cattle and divided it with Earl Nichols after cashing it at the Silex Bank; the day before he shipped the cattle he and Nichols found these cattle in his wheat field and he said to Nichols, "For fifteen cents I'd ship those damn cattle to market," and Nichols said, "OK and then we'll split what we get out of it." He stated that neither he nor Nichols owned the cattle, nor did they know who did own them.

Appellant was a witness in his own behalf and his testimony on direct examination was substantially the same as his written confession; in fact, it was almost identical. When he was asked why he made the written confession he said, "I was told to."

Under the circumstances of this record, we think the failure of the trial court to hold a preliminary examination to determine in the first instance if the confession was voluntary was harmless error and non-prejudicial to appellant's rights because appellant's own evidence shows that the confession was voluntary. "It has often been ruled in this state that a confession, to be inadmissible on that ground, must have been made to a person in authority in consequence of improper influences exerted by him, and, if no threats of harm or promises of worldly advantage were made by such officer, or by the master of the accused when directly concerned, the confession is admissible." State v. Williamson, 339 Mo. 1038, 99 S. W. (2d) 76, 1. c. 79.

 Appellant contends the corpus delicti was not established because the state failed to prove that the larceny of the cattle occurred on December 6, 1943. In a criminal prosecution, proof of corpus delicti necessitates the introduction of sufficient evidence to establish the fact that a crime was committed. Proof of a defendant's connection therewith is not a part of the corpus delicti. State v. Fitzsimmons, 338 Mo. 230, 89 S. W. (2d) 670. We have already pointed out facts sufficient to show that the crime of grand larceny was committed. Both the state's evidence and appellant's own testimony make such proof.

Appellant contends that it was error to admit state's exhibit "A". This exhibit was a notice inserted in the Troy Free Press, dated January 8, 1944, by George Nassar, advertising for his two white-faced heifers which had strayed. The Troy Free Press is a newspaper published at Troy, Missouri. In the case of State v. Willard, 346 Mo. 773, 142 S. W. (2d) 1046, the prosecuting witness and his wife were permitted to testify about inquiries made by them after they missed a cow alleged to have been stolen. We held such testimony was not prejudicial error. We see no distinction between an oral inquiry and one published in a local newspaper. We therefore hold appellant was not prejudiced by the introduction of this exhibit.

Appellant next contends that the trial court erred in admitting state's exhibit "E" because it was a confidential communication between husband and wife. Exhibit "E" was a note written by appellant to his wife just prior to the time he was taken from his home to Troy, Missouri, where he was placed in jail. Appellant asked State Trooper Sobolewski if he might write the note telling his wife where he had gone. After writing it he asked the officer if he cared to read it, and the officer did read the note. It, therefore, was not a confidential communication between husband and wife. Moreover, when it was offered in evidence appellant's attorney stated, "I have no objection." After it was admitted then for the first time appellant made an objection to its admission. We rule there was no error in admitting it in evidence.

Appellant then contends that instruction No. 5 is erroneous. This instruction is in the usual form of a grand larceny instruction which directs a verdict. It required the jury to find that the larceny took place on December 6, 1943. Appellant contends that there is no evidence that the larceny took place on that date. We have already held that time was not the essence of the crime in this case. State v. English, 228 S. W. 746. He also contends that the instruction ignored his defense that Section 14463, supra, was in effect in Lincoln County and, therefore, he had lawful possession of these cattle. The instruction did have a clause that said, "and unless you do so find the facts you will acquit the defendant." However, the court did give instruction No. 6 which, in effect, told the jury that if the cattle in question were outside the enclosure of the owner, and trespassing on the lands in possession of appellant and that he restrained them without felonious intent to steal "you will then find the defendant not guilty as charged and this is so even though you may believe that the defendant afterwards, to-wit on the 7th day of December, 1943, sold said cattle and received the money therefor." Reading the instructions together, the jury was instructed on his defense. We find no error in instruction No. 5.

Appellant contends that instructions No. 5 and No. 6 conflict with each other and are, therefore, erroneous. Instruction No. 6 was

given at the request of appellant. It was more favorable to appellant than the facts justified. Appellant has failed to distinguish between possession and custody as possession was in the rightful owner at all times. Since appellant asked the court to give instruction No. 6 he cannot complain of the giving of it. State v. Bennett, 87 S. W. (2d) 159.

Instruction No. 3 was on circumstantial evidence. Appellant makes no complaint as to its form but contends there was no circumstantial evidence in the case. We have already shown that the cattle were seen in the public road by John Norton and he passed appellant and Nichols about a quarter of a mile from these cattle walking toward them. This is a circumstance that the cattle were not in the wheat field but driven from the public road to the pig pen on the appellant's rented farm. We have already stated facts from which the jury might infer that appellant more than one time formed the intent to steal these cattle. So, there was both direct and circumstantial evidence in this case. If a case partially depends upon circumstantial evidence, it is proper, but not mandatory, to instruct thereon. State v. Arnett, 338 Mo. 907, 92 S. W. (2d) 897.

Instruction No. 4 defined grand larceny. It told the jury that the essentials of grand larceny as charged are the felonious taking, by which is meant without color or right or excuse with intent to convert to one's own use, the property of another who is the owner. We have already held that if these cattle were in the custody of appellant, the possession of the same were in the lawful owner, even though they had strayed from his enclosure. Therefore, the asportation took place when appellant formed the intent to deprive the lawful owner of possession of the cattle. Under the evidence, this could have taken place before or after they were penned up.

Appellant contends, that Sheriff Palmer's testimony was not proper for rebuttal testimony but, rather, was an attempt to bolster up the state's case. With this we do not agree. Appellant had testified that he signed the confession because he was told to sign it by the officers. Sheriff Palmer's testimony was, in effect, a denial that appellant was told to make a statement. Moreover, whether or not to admit competent evidence in rebuttal lies largely within the discretion of the trial court. State v. Lewis, 137 S. W. (2d) 465.

Other points raised by appellant have already been ruled adversely to him.

From what we have said, it follows the judgment of the trial court should be affirmed. It is so ordered. All concur.