235 S.W.2d 294 (1950)
STATE
v.
ALLEN.
No. 41933.
Supreme Court of Missouri, Division 1.
December 11, 1950.
Rehearing Denied January 8, 1951.
Morris A. Shenker, St. Louis, for appellant.
J. E. Taylor, Atty. Gen., Lawrence L. Bradley, Asst. Atty. Gen., for respondent.
HOLLINGSWORTH, Judge.
Defendant-appellant (hereinafter referred to as defendant) appealed from a conviction of murder in the second degree for the killing of Juanita Smith. He stood on a demurrer to the evidence.
The principal grounds of his appeal are: (1) admission of testimony by police officers that defendant had remained silent when questioned following his arrest, and the circuit attorney's comments upon this fact, both in his opening statement and in his closing argument; (2) admission into evidence of extrajudicial declarations by Juanita Smith that defendant had shot her and by his wife, Garvinia Allen, that defendant had shot her, Garvinia; (3) the circuit attorney's repeated comments during his closing argument upon the failure of both defendant and his wife to testify; (4) failure of the court to instruct on the law of circumstantial evidence; (5) failure to instruct on the law of self-defense and accidental killing; and (6) that no submissible case was made.
The killing occurred in the City of St. Louis between the hours of eight and nine o'clock on the night of December 28, 1947.
Juanita Smith, aged 32, was the sister of appellant's wife, Garvinia Allen, aged 27. She lived with her mother, Mrs. Bessie Mason, at 1727 Cora. Defendant and Garvinia were married on December 6, 1947, and were living at 1905 Wagner, three or four blocks from Mrs. Mason's home on Cora. Garvinia Allen's daughter, Betty Jean Mason, 10 years of age, lived in the home with defendant and Garvinia at 1905 Wagner. Defendant's cousin, a small girl named Lafayette Rayburn, a resident of Chicago, was a house guest of defendant and Garvinia.
*295 On the afternoon and evening of December 28th, these children visited at the home of Betty Jean's grandmother, Mrs. Bessie Mason, on Cora Street, while defendant and his wife, Garvinia, attended a cocktail hour and dance at the Riviera Club. Upon their return from the club, defendant and Garvinia went to the home of Mrs. Mason for the children at about 7:45 p. m. While there, defendant and Garvinia quarreled. Defendant stated to Mrs. Mason that Garvinia had danced with another man before she danced with him. He was angry and paced up and down the room, striking his hands together, and exclaimed, "I am so mad; I am so mad." Mrs. Mason tried to placate him and offered refreshments to him and Garvinia. About 8:00 p. m., defendant opened the door, pushed Garvinia out and went out behind her, followed by the children. During the time defendant and Garvinia were at Mrs. Mason's home, Juanita Smith was asleep in another room and unaware of their presence.
As defendant and Garvinia walked to their home, with the children following, the quarreling continued but their words were not distinguishable by the children. When they arrived home they went into a room other than the one in which the children were. The quarrel continued in that room. A noise that sounded like a shot came from that room, and both children ran to the home of Mrs. Mason. They arrived there screaming and excited. Juanita Smith was awakened and upon learning what had brought the children there put on her coat and left. While the children were at the Mason home on this occasion and as Juanita was leaving, defendant called Mrs. Mason by telephone and told her "he had shot because he was so mad, he had to do something." In this same conversation, defendant asked Mrs. Mason if she wanted to talk to Garvinia. Mrs. Mason said, "Yes", and then asked Garvinia what happened. The evidence does not reveal Garvinia's answer.
About twenty minutes after Juanita left the Mason home, defendant again called Mrs. Mason over the telephone and told her "he had done everything", and told her "he had to hang up and call a doctor."
About 9:00 p. m. the police received a radio call and went to 1912 Wagner, which is some 150 to 175 feet from the residence of defendant and Garvinia at 1905 Wagner. There they found Juanita Smith in a halfsitting position on the curb in front of 1912 Wagner, bleeding from an abdominal wound. An effort was made to converse with her, but she gave no response. She was taken to the Homer G. Phillips Hospital. The police then went to 1905 Wagner, where they found Garvinia Allen lying on her face and stomach on the floor. She had been shot and she too was taken to the Homer G. Phillips Hospital. Defendant was not in the home at that time.
A police officer was stationed in the home and defendant returned there between 9:30 and 10:00 p. m. Upon arrival he was placed under arrest and taken first to the police station and thence to the hospital. After his arrest, defendant was questioned by the police several times both at the home and police station concerning the shooting. He refused to answer these questions or to make any statement whatever concerning the matter.
Upon arrival at the hospital at about 10:15 p. m., defendant was taken to the emergency room where Juanita Smith was receiving medical attention. She was asked if she could see the man that shot her. She answered, "That's him, Robert Allen." Defendant said nothing. He was then taken to another room and into the presence of his wife. She said he was the man who shot her. Again, defendant said nothing.
Juanita died at 10:40 o'clock that night. An autopsy was made and a thirty-two caliber bullet was taken from her body. It had entered from the front, perforated her stomach and lodged near her spine. A thirty-two caliber bullet was also found in the room in which Garvinia lay when the police found her. No comparison was made to determine whether these bullets had been fired from the same pistol due to the fact that the bullet found in the home was badly mutilated.
At the trial Garvinia was called as a witness in behalf of the State. Defendant objected to her testimony on the ground, *296 among others, that it was a violation of the witness's constitutional rights and against her will. The objection was sustained.
In the opening statement the circuit attorney stated the evidence would show that following his arrest, defendant refused to make any statement; that at the police station defendant gave no information; that he wouldn't talk; and that when Juanita had declared in his presence that he was the man who shot her and Garvinia had declared in his presence that he had shot her, defendant said nothing. Three police officers were permitted to testify in behalf of the State that following his arrest defendant refused to make any statement, gave no information; and that when accused respectively by Juanita and Garvinia that he was the man who shot them, he stood mute. And, finally, in his closing argument, counsel for the State dwelt at some length upon this as an admission of guilt. Timely and adequate objections were made by counsel for defendant to the statements of the circuit attorney in the opening statement, to the evidence when offered and to the references thereto in the closing argument. When objections were overruled, motions to strike and for declaration of mistrial were made and denied.
"The law in this state is that `Silence of the accused when not under arrest, and in circumstances such that only a guilty person would have remained silent, may be shown. After arrest or while in custody the evidence is inadmissible because he is under no duty to speak. State v. Bowdry, 346 Mo. 1090, 1096, 145 S.W.2d 127, 129 (5). The same is true of undenied accusations made by third parties in his presence. State v. Kissinger, 343 Mo. 781, 786, 123 S.W.2d 81, 83 (4).' State v. Dowling, 348 Mo. 589, 154 S.W.2d 749, loc. cit. 755." State v. Battles, 357 Mo. 1223, 212 S.W.2d 753, 757. This is not a situation such as is found in the case of State v. Battles, supra, wherein arresting officer was asked whether defendant made any statement, and he answered, "No". There the court held: "There can be no doubt of the fact that the question asked the witness was proper because if the appellant had voluntarily made any statement against interest it would have been admissible. Voluntary confessions are always admissible." In this case, counsel for the State was not seeking to develop a statement against interest. He knew the answer would be "No", and relied upon that fact as substantial evidence of guilt.
There was no evidence tending to show, nor is any contention made, that the declaration of Juanita Smith that defendant shot her and the declaration of Garvinia that defendant shot her were a part of the res gestae. Sconce v. Jones, 343 Mo. 362, 121 S.W.2d 777, 781; State v. Benson, 346 Mo. 497, 142 S.W.2d 52, 54. Neither was there any evidence that Juanita's statement was a dying declaration. State v. Custer, 336 Mo. 514, 80 S.W.2d 176, 177; State v. Strawther, 342 Mo. 618, 116 S.W.2d 133, 136, 120 A.L.R. 583. And, of course, Garvinia's statement could not have been a dying declaration. She did not die. Therefore, as the record in this case is made, both declarations were incompetent under any theory.
During his closing argument the circuit attorney referred several times to the failure of both defendant and his wife to testify. The following instances are typical:
"A fortunate thing in this case is that Juanita Smith lived for two hours, and lived long enough to identify that person that night, whobut who will nothas not talked since that time. * * *
"Nor will that person talk. Just remember this, among two or three other things I have asked you about. Of the three persons there that night, that could tell us all about this particular homicide of this girl, this girl is deceased, and this girl is gonethat is one. Now, two of the people still live, and both of them have been this morning in this courtroom. This defendant, of course, doesn't even have to defend himself. * * *
"The other person who could have told everything that happened took that stand up there, on that seat, and sat mute. Now, there must be something in this case for *297 them to conceal, or you would have gotten all of the truth, and who was the killer of her sister. * * *
"He had nothing to say when he returned, and he had nothing to say from that time on, until he made bond twentyfour hours later, and he has said nothing since. * * *
"Gentlemen of the Jury, the defendant is here, of course, in the courtroom. You cannot lose sight of the fact that the only other eye witness who could have told us anything at all, told us nothing. * * *
"But, gentlemen, of the three persons, the ones I have named, one is gone, the defendant sits here, that took her life, the other person from whom you could learn something will say nothing. * * *"
In each of the above instances, timely and adequate objections were made and overruled. Motions to strike and for declaration of mistrial were also overruled. These comments were in direct violation of the provisions of Section 4082, Mo. R.S.A., as follows: "If the accused shall not avail himself or herself of his or her right to testify, or of the testimony of the wife or husband, on the trial in the case, it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place." We have consistently held similar comments to be reversible error. State v. Drummins, 274 Mo. 632, 204 S.W. 271; State v. Watson, Mo.Sup., 1 S.W.2d 837, 839; State v. Shuls, 329 Mo. 245, 44 S.W.2d 94, 96. See also State v. Dunbar, Mo.Sup., 230 S.W. 2d 845, and West's Mo.Digest, Criminal Law 721(3).
Appellant's contention that the court erred in failing to instruct the jury on the law of circumstantial evidence is without merit. Under the testimony as admitted, there was direct evidence of defendant's guilt and no instruction on circumstantial evidence was necessary. But, with the extrajudicial declarations of Juanita and Garvinia excluded, there was no direct evidence of defendant's guilt and an instruction on the law of circumstantial evidence would have been required if, but only if, requested. No such request was made and the court cannot be convicted of error in that respect. State v. Hadlock, 316 Mo. 1, 289 S.W. 945, 946; State v. Singleton, Mo.Sup., 77 S.W.2d 80, 85; State v. Martin, 357 Mo. 368, 208 S.W.2d 203, 209.
There was no evidence of self-defense or of an accidental killing. The court was under no duty to instruct the jury on issues not presented by the evidence. State v. Dyer, 314 Mo. 608, 285 S.W. 101, 102.
Finally, it is contended that a submissible case was not made. We have held that the silence of defendant following his arrest is not admissible evidence of his guilt. We have held also that the statements of Juanita and Garvinia were not shown to be a part of the res gestae, nor shown to be (and Garvinia's could not be) admissible as dying declarations.
Was a submissible case made with the statements of Juanita and Garvinia excluded? We believe it was. The reckless and unreasoning anger of defendant; his admission over the telephone that he had fired a shot at the home because of his anger; the inference that Juanita left her home to go to the scene of the quarrel, and to intervene; her proximity to defendant's home when found with a pistol shot wound in her abdomen; the time elapsed (some 20 minutes) between Juanita's exit from her home and the second telephone call; the fact that Garvinia was found shot at defendant's home and the finding of a spent bullet there, and the clear inference that he had shot her at approximately the same time Juanita was shot; defendant's second telephone call that he "had done everything" and had to "hang up and call a doctor"; and the inference of flight of defendant after he had made the second telephone call: this evidence, unexplained and uncontradicted, affords grounds for the conclusion that defendant fired the shots that killed Juanita and wounded Garvinia.
*298 We cannot know, of course, what the verdict would have been had the statements of Juanita and Garvinia been excluded. Neither can we know what the evidence may show at another trial. But if all of these matters are shown, together with the other unquestioned evidence, they would support a conviction, if the jury should find therefrom his guilt beyond a reasonable doubt.
The case is reversed and remanded for a new trial in accordance with the views herein expressed.
All concur.