261 S.W.2d 50 (1953)
STATE
v.
SMITH.
No. 43499.
Supreme Court of Missouri, Division No. 1.
September 14, 1953.
Motion for Rehearing or to Transfer to Denied October 12, 1953.
*51 Morris A. Shenker, St. Louis, for appellant.
John M. Dalton, Atty. Gen., D. D. Guffey, Asst. Atty. Gen., for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied October 12, 1953.
CONKLING, Judge.
This case came to the writer upon reassignment. Portions of the previously prepared opinion are hereinafter used without quotation credit.
Defendant, John Henry Smith, has appealed from a judgment of conviction of murder in the second degree. He was sentenced upon the jury's verdict to 35 years' imprisonment in the state penitentiary.
On Thanksgiving Day, 1950, defendant shot and killed Mattie Bowen. Defendant lived one door south of deceased; the *52 two flats apparently were in the same building but were separated by an areaway or gangway which extended from the front of the premises to the rear of the buildings. The State's evidence tended to show that deceased's daughter and some other children were throwing snowballs, ostensibly at Nancy Bowen's older brother. One of the snowballs struck defendant's front steps or door. Defendant's wife went to the door and told the children to stop throwing snowballs. Deceased then appeared and stood at or near defendant's front steps. An argument ensued between deceased and defendant's wife. Deceased turned away from the steps and was in the act of entering or had entered the gangway when defendant shot at deceased at least four times. Three of the bullets entered deceased's body, all from the left side. Two of them emerged on the right sideone from the right hip and one from the right buttock. The third bullet was removed from the right breast. Deceased was pronounced dead a short time later, from internal hemorrhage following gunshot wounds in the liver and in the right lung. When police officers arrived, defendant, who had re-entered his house, admitted he had shot deceased and produced the revolver, in the chamber of which were six spent shells. Defendant later signed a statement in which he admitted shooting deceased. Further details of the evidence, particularly defendant's own testimony, will be stated in connection with the several contentions.
Defendant contends that the evidence was insufficient to sustain the conviction for murder in the second degree. This contention, as we understand it, is twofold; first, that all the credible evidence in the case showed that defendant was acting in defense of his habitation, and that defendant had a sufficient provocation to make the killing only manslaughter as a matter of law. The court instructed on second degree murder and manslaughter. We shall assume, without deciding, that the rule in this state as to the necessity that a provocation to be sufficient to permit submission of guilt of manslaughter must involve personal violence, does not apply when a homicide is committed on provocation in the defense of property or habitation. See State v. Matthews, 148 Mo. 185, 49 S.W. 1085, 1087; State v. Bongard, 330 Mo. 805, 815, 51 S.W.2d 84, 89; State v. Biswell, 352 Mo. 698, 709, 179 S.W.2d 61, 66.
The fallacy of defendant's first contention is that all the credible evidence does not show that defendant was acting in defense of his habitation. On the contrary, as we have indicated, there was evidence that deceased was shot while she was walking away from defendant's front steps and entering the gangway. This contention of defendant is, in reality, based upon his next contention, viz., that because the State's evidence was furnished by three small girls, two of them seven and one of them ten at the time of the shooting, and because there were some inconsistencies in their testimony, and because, it is claimed, their testimony was in conflict with that of the coroner's physician and contrary to the physical facts, their testimony should be ignored in determining the submissibility of the case. There is no merit in either of these contentions. The ten-year-old girl, daughter of deceased, testified that the first shot was fired as her mother was entering the gangway and going away from the defendant. The other girls' testimony was not to the contrary. True, there were possible inconsistencies in their testimony, but these were for the jury in considering the weight to be given their respective statements.
The coroner's physician testified that there were three wounds of entry in the left side of deceased's body and two wounds of exit in the right side. There was evidence from which the jury could have found that deceased's position was such that the three bullets entered from the left side and that two of them emerged on the right side; and that the fatal shots caused through-and-through wounds of the lung and liver. This testimony was consistent with the State's evidence as to the relative positions of defendant and deceased *53 at the time the shots were fired. The position of deceased, as testified to by her daughter, could well have been such that the shots would have entered her left side as deceased was entering the gangway. The record does not demonstrate that the State's evidence is "not in accord with the physical facts," and there is no demonstrated reason to ignore the testimony of the three girls who testified for the State in determining the submissibility of the case. We rule that the State's evidence was sufficient to sustain a conviction of second degree murder.
Defendant's contention that the trial court erred in admitting rebuttal testimony offered by the State makes necessary a review of defendant's testimony.
Defendant testified that he was seated in the kitchen when his daughter told him that a snowball had struck the glass in his front door; that he went to the front door and asked the children not to throw at the door. He returned to the kitchen but the snowballing against the door continued. Later, defendant's wife twice went to the door, and requested that the snowballing against the door be stopped; on the second such occasion defendant heard deceased, then proceeding from the rear of the buildings through the gangway toward the front of the premises, say she was going to "kill all those G____ d____ Smiths." (Defendant testified that deceased had made prior threatstwo of these involved statements that deceased was going to kill defendant, and another involved the display of a gun under circumstances which defendant understood to be a threat.) Defendant remained in his kitchen and heard this conversation: deceased asked defendant's wife: "What the devil you asked my children about throwing snowballs?" Defendant's wife answered: "Here she just throwed the ball." Deceased replied, "You are just a G____ d____ liar. * * * You come out here, I will whip you. I will kill every G____ d____ one of you." Upon hearing this last statement, defendant jumped up, rushed from the kitchen to the middle room of his home, took a revolver from a trunk, rushed to the front door, and saw deceased coming up the steps toward his wife and daughter, who was standing immediately behind his wife. Defendant said he did not remember just what then happened; he did not remember firing the gun.
On cross-examination of defendant, the State developed that defendant remembered obtaining the gun from the trunk in the middle room; remembered that his 25-year-old son was then in bed in that middle room; remembered that he took the revolver from the trunk with his right hand and carried it in his right hand; remembered that the front door was wide open and that his wife was standing at the right or south side of the open door and that his daughter was right behind his wife; remembered that he saw deceased when he was about three feet from the door; remembered that deceased was coming up the south side of the steps, to his right; remembered that, and demonstrated to the jury how, he held the revolver in his right hand; remembered that his left hand was down at his side.
The State's cross-examination continued:
"Don't you rememberdon't you remember pulling the trigger on this pistol? A. No.
"Q. You don't. Do you remember how much force it takes to pull that trigger? Would you pull that trigger? A. What's that?
"Q. Would you pull the trigger of that pistol to see how much force it takes? A. (Indicating).
"Q. It takes some force to do that, doesn't it? Don't you remember pulling that trigger six times? A. No.
"Q. Don't you remember hearing six shots fired? A. No.
"Q. Don't you remember seeing the bullets strike into her body? A. No, I did not. * * *
"Q. And you don't know, you don't even know if you fired the pistol? A. No.

*54 "Q. Do you think somebody else fired it? A. Well, I must have fired it. I had itI guess.
"Q. You must have fired it, but you didn't hear any of the shots? You don't remember pulling that trigger six times in rapid succession? A. No. * * *
"Q. Don't remember seeing the bullets hit the woman? A. No. * * *
"Q. But you don't remember anything about pulling that trigger six times and shooting? A. No. I ran up to the house too excited to remember anything about that.
"Q. You just don't remember? A. No."
The State further developed by cross-examination that, immediately after the firing, defendant remembered replacing the revolver in the trunk in the middle room and at that time remembered seeing his son sitting up in bed; remembered that the police arrested him shortly thereafter; remembered that he produced the revolver for the police and that a police officer took him to the gangway where he saw deceased.
The effect of the defendant's testimony is this: while defendant remembered in some detail his acts in the sequence of acts immediately preceding and subsequent to the shooting, and admitted that he must have fired the gun, he did not remember the actual act of firing or pulling the trigger for the stated reason that he was too excited to remember it.
The State in rebuttal was permitted, over the objection of defendant, to adduce the testimony of Sergeant Ruff, of the St. Louis police force (the ranking officer in the research laboratory), which was in substance: that the gun, which had theretofore been identified as that used by the defendant, was a Smith & Wesson .38-caliber special revolver; that he (the officer) had fired the weapon once or twice; that the revolver could be set so that it could be used either as a single action or double action revolver"single action" meant that the gun needed to be cocked with the thumb after each shot, while "double action" meant that pulling the trigger fired and, at the same time, cocked the weapon for the next shot; that when such Smith & Wesson .38-caliber special revolvers leave the factory they have a double-action pull of ten to fifteen pounds and a singleaction pull of four to five pounds; that this pull is the pressure necessary to be exerted against the trigger to fire the gun; that the necessary pressure is the same no matter how the gun is gripped but that it takes a "terrific pull if you pull like this" (apparently demonstrating a pull against the trigger without a proper grip), but if the gun is gripped properly (again demonstrating), there is a leverage and the trigger is "very easy to pull"; that the amount of barrel "kick up" depends upon the manner in which the gun is gripped; that holding the gun straight out and firing "double action" the barrel would wave between shots, but that when properly gripped and fired "single action" there would be no waving of the barrel.
A colloquy without the hearing of the jury indicated the theory upon which this evidence was admitted. The court asked the assistant circuit attorney this question: "It is being admitted solely for the purpose of showing the feasibility of his story with the reference that he didn't know the gun went off?" The assistant circuit attorney agreed that that was his theory, and defendant's objection was overruled. Defendant repeated his objection at other times and, at the conclusion of the testimony, moved to strike.
Defendant's testimony was, as noted heretofore, that he did not remember firing the gun because he was too excited to remember. It was proper for the State, on cross-examination of defendant, to attempt to demonstrate for the consideration of the jury, the improbability that this one act (the act of firing) could have been forgotten while all the other acts involved in his series of acts were remembered. And it was proper for the State to show that the act of *55 firing required some pressure on the trigger, so that the jury would know what was involved in the claimed forgotten act of defendant. And the only reasonable construction of the applicable parts of the record, above quoted, shows that the State sought to so show by asking the defendant to demonstrate by pulling the trigger that some pressure was required to do that act. From all of defendant's testimony, on both direct and cross-examination, the jury could reasonably find that defendant was not telling the truth when he said he did not remember firing the gun because he was "too excited" to remember; either because the jury could find from all the evidence that defendant was not in fact excited or that, even though excited, it was so improbable that he would remember the details of all of his acts except the act of firing as to make his testimony that he did not remember firing unbelievable.
Defendant contends the trial court erred in receiving the above testimony of Sergeant Ruff in rebuttal, because it was not (defendant claims) rebuttal testimony and was neither material nor competent on the issue of defendant's memory. With that contention of defendant we do not agree.
While the testimony in question was perhaps not the most cogent and probative under the circumstances, we think it was clearly admissible as tending to prove an intentional purposeful act on the part of defendant. He testified he did not "remember anything about pulling the trigger six times and shooting." The testimony of Sergeant Ruff tends to establish the purposeful doing of an act which, under the circumstances, the jury could find defendant would and did in fact remember. Assume, for illustration, that instead of pulling the trigger in question six times, it had been the testimony that deceased had been struck by defendant on the head with the revolver a blow of sufficient force or severity to have mashed in her skull, and defendant had testified he did not remember such act. If that had been the testimony the force which would have been necessary to produce that result would be the proper subject of testimony to establish that such act was an intentional thing done with the evident purpose of mashing the head and producing death and as being an act defendant, under those circumstances, would certainly remember. Among other things, Sergeant Ruff's testimony shed light upon defendant's credibility as a witness. We think the testimony was properly admitted. The "scope of rebuttal testimony is largely within the sound discretion of the trial court, and, unless the court has abused its discretion, or a defendant's rights are prejudicially affected, an appellate court will not reverse on that ground, even though the evidence in question is not strictly rebuttal evidence." State v. Martin, Mo.Sup., 56 S.W.2d 137, 140. See also State v. Villinger, Mo.Sup., 237 S.W.2d 132, 136; State v. Smith, 354 Mo. 1088, 1097[11], 193 S.W.2d 499, 503[14, 15]; State v. Lewis, Mo.Sup., 137 S.W.2d 465, 466[3, 4]; State v. Mason, 322 Mo. 194, 203, 14 S.W.2d 611, 615.
Defendant next contends that Janet Cotter was an incompetent witness. Janet was a little girl 8 years of age at the time of trial. She was seven at the time of the shooting. After some preliminary questions by the State, defendant objected that the witness had not been sufficiently qualified to testify at all and the court indicated that further qualification would be desirable. Thereafter, the assistant circuit attorney, the court, and counsel for defendant all asked questions pertaining to the competency of Janet to testify, and relating largely to the question of whether she understood the meaning of an oath. There was no objection whatever after these series of questions to the competency of the witness. Defendant's objection is made for the first time here and hence the assignment is not reviewable. However, we are of the opinion that the trial court did not abuse its discretion in permitting the witness to testify, in view of her testimony as to her understanding of the necessity for telling the truth, and in view of her testimony as a whole. State v. Tillett, Mo. *56 Sup., 233 S.W.2d 690. The weight to be given her testimony was a question for the jury.
In rebuttal, the State asked deceased's husband (referring to a specific time and to the witness' home): "Q. I will ask whether or not either you or your wife had a pistol in that house? A. No, Sir." Defendant moved that the answer be stricken as a conclusion. While there appears to be no reason for defendant's failure to have objected before the answer was given, nevertheless, on the merits, it appears that the answer of the witness may have been a statement of fact based upon his personal knowledge. Certainly, the witness would be expected to have personal knowledge as to whether there was a pistol in his own home at a specific time. If not, defendant would need to show the contrary by preliminary inquiry or by cross-examination.
Defendant next contends the court erred in failure to declare a mistrial after police officer Loesche had testified, as follows:
"Q. Don't tell us what anyone said, Officer, were you present when Smith was arrested? A. I was on the sidewalk, and he was arrested in his home by the Sergeant. I wasn't in the house at the time of his arrest.
"Q. And you didn't participate in any questioning of this man at the station, did you? A. Well, the Sergeant questioned him, and I was present.
"Q. Where was that? A. That was at the station, but he never made any statement to the Sergeant.
"Q. Nor to you? A. Nor to me.
"Q. And * * *".
Citing the case of State v. Allen, Mo.Sup., 235 S.W.2d 294, 296, defendant contends that the officer's statement that defendant made no statement to the Sergeant or to him violated defendant's constitutional rights. After denying defendant's later motion for a mistrial the trial court stated: "Gentlemen of the jury, you will disregard entirely the statement of the officer that McVey questioned him but he did not make a statement, for the reason that a man under arrest doesn't have to make any statement to the police at all, and he is under no duty or obligation to make any statement. There is no evidence in this case at all, at this time, that he refused to, even if he were asked, so you will disregard that entirely."
It is observed that defendant did not object to the gratuitous answer of the witness, nor to the next succeeding question, "Nor to you," and defendant may not now be heard to base a claim of error thereon. State v. Hart, 292 Mo. 74, 237 S.W. 473, 477. And the circumstances of this incident are wholly unlike the situation ruled in State v. Allen, supra, for there the State three times proved that defendant refused to make any statement and there the State's attorney, in his closing argument, dwelt at length upon such refusals as an admission of guilt. The law of this State upon this question is clearly stated in State v. Battles, 357 Mo. 1223, 212 S.W.2d 753, 756, and in State v. Allen, supra. In the instant circumstances, defendant's contention of error is without merit.
At the close of the defendant's evidence the court permitted the State to amend the indictment by striking out the word "one" just preceding the words "metal bullet," and by adding the letter "s" to the word "bullet," so that as amended the indictment read "metal bullets." Defendant claimed surprise and now claims the court erred in permitting such amendment. The point is utterly without merit. Sections 546.080, 546.030 RSMo 1949, V.A.M.S.
Defendant next contends that the court erred in giving instruction 3. The defendant's motion for new trial limits the attack on instruction 3 to these complaints: (a) that it improperly states the law, (b) that it comments upon the evidence, (c) that it urges defendant's conviction by leading the jury to believe that the court felt that the evidence justified a finding of guilty. Instruction *57 3 submitted facts which, if and when found by the jury, authorized a verdict of guilty of second degree murder. Careful examination of the instruction in the light of our previous rulings discloses that the instruction is free from error. It properly states the law, does not comment upon the evidence and neither urges conviction nor leads the jury to believe that the court felt that the evidence justified a finding of guilty.
Additional criticisms of instruction 3 are urged in the defendant's brief. But the limitations upon the defendant's objections to this instruction which appear in defendant's motion for new trial, and the provisions of Section 547.030 of our statutes and our Rule 27.20, forbid our consideration of the additional criticisms which for the first time are urged in the brief filed here. "It is well-settled that objections must be specific and call the attention of the (trial) court directly to the ground upon which the objection is made, and it is also settled that appellant will not be permitted to broaden the scope of his objection on appeal beyond that made in the trial court." State v. McGuire, 327 Mo. 1176, 39 S.W. 2d 523, 526[8] [9]. The above noted contentions made as to instruction 3 are without merit and must be overruled.
Defendant next attacks the action of the trial court in giving instruction 4 as to manslaughter. In his motion for a new trial defendant limited his contentions as to instruction 4 to these complaints: (a) that it improperly stated the law as to manslaughter, (b) that it is not a complete or accurate statement of the law, (c) that it is a comment on the evidence, and (d) that it urges and implores the jury to convict defendant and leads the jury to believe the trial court feels there is evidence which would justify a finding of guilty of manslaughter. Examination of instruction 4 discloses that it properly, completely and accurately stated the law of manslaughter and did not comment upon the evidence. It is not subject to the criticism that it indicated any view or belief of the trial court as to what verdict the evidence in the case justified.
Here again, in defendant's brief, he brings forward for the first time additional criticisms of instruction 4. For the reasons just above appearing in our discussion of instruction 3 we cannot consider such additional contentions newly made in this court. The above noted contentions as to instruction 4 being devoid of any merit must be denied.
Defendant's brief next attacks the trial court's action in giving instruction 6. This instruction instructed upon self-defense. But defendant's motion for a new trial did not assign as error the action of the court in giving instruction 6. Notwithstanding the fact just last stated we have examined the contention made as to instruction 6 and find it without merit. And we have examined also defendant's contention that we should examine his complaint as to the instruction even though he did not assign it in his motion for new trial. The ingenious contention made has been many times expressly denied in prior opinions. For reasons above stated there is nothing before us for any ruling upon this matter.
The punishment was assessed by the jury which heard the evidence. That punishment is within the statutory limits of Section 559.030, relating to second degree murder.
The indictment, verdict and judgment are in form and sufficient. The judgment was responsive to the verdict of the jury and the evidence in the case. Defendant was granted allocution. He had a fair trial and the verdict of guilty is supported by substantial evidence. The judgment of the circuit court must be and is hereby affirmed. It is so ordered.
All concur.